**E-filed: September 16, 2025**

Bob L. Olson, Esq. (Nevada Bar No. 3783)
Erin M. Gettel, Esq. (Nevada Bar No. 13877)
SNELL & WILMER L.L.P.
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 784-5200
Facsimile: (702) 784-5252
Email: bolson@swlaw.com
egettel@swlaw.com

*Attorneys for Republic of Kazakhstan*

Snell & Wilmer L.L.P. LAW OFFICES 1700 South Pavilion Center Drive, Suite 700 Las Vegas, Nevada 89135 702.784.5200

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>BIG SKY ENERGY CORPORATION,<br><br>Debtor. | Case No. 25-50445-hlb<br><br>Chapter 7<br><br>**NOTICE OF ISSUANCE OF SUBPOENA DUCES TECUM BIG SKY ENERGY CORPORATION** |

**PLEASE TAKE NOTICE** that pursuant to Federal Rule of Bankruptcy Procedure 2004, Republic of Kazakhstan, by and through its counsel, Snell & Wilmer L.L.P., will serve upon **BIG SKY ENERGY CORPORATION,** a subpoena ordering the production of documents on or before **5:00 p.m. on October 3, 2025**, at the law offices of Snell & Wilmer L.L.P., located at **5520 Kietzke Lane, Suite 200, Reno, Nevada 89511**. A copy of the subpoena is attached as **Exhibit 1**.

Notice is further given that the Republic of Kazakhstan will take the examination of Big Sky Energy Corporation on **October 31, 2025, at 9:00 a.m**. at the law offices of Snell & Wilmer L.L.P., located at **5520 Kietzke Lane, Suite 200, Reno, Nevada 89511**, upon oral examination.

Dated: September 16, 2025. SNELL & WILMER L.L.P.

By: */s/ Bob L. Olson*
Bob L. Olson, Esq. (NV Bar No. 3783)
Erin M. Gettel (NV Bar No. 13877)
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
Email: bolson@swlaw.com
egettel@swlaw.com
*Attorneys for Republic of Kazakhstan*

# EXHIBIT 1

EXHIBIT 1

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of NEVADA

In re:

BIG SKY ENERGY CORPORATION,

Debtor.

Case No. 25-50445-hlb

Chapter 7

## SUBPOENA FOR RULE 2004 EXAMINATION

To: Big Sky Energy Corporation c/o Registered Agent, Michael J. Morrison, Chtd., 1485 Ridgeview Cr., Suite 220, Reno, NV 89519

☒ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. **A copy of the court order authorizing the examination is attached.**

| PLACE | DATE AND TIME |
|---|---|
| **Snell and Wilmer L.L.P.<br>5520 Kietzke Lane, Suite 200<br>Reno, NV 89511** | **October 31, 2025, at 9:00 a.m.** |

The examination will be recorded by this method: **stenographic and/or audiovisual means**

☒ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: **See Exhibit A for list of documents. Documents to be delivered to Snell & Wilmer L.L.P., 1700 South Pavilion Center Drive, Suite 700, Las Vegas, NV 89135 by October 3, 2025, by 5 p.m.**

---

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: September 15, 2025.

CLERK OF COURT

OR

______________________________
*Signature of Clerk or Deputy Clerk*

*/s/ Bob L. Olson*
*Attorney's signature*

---

The name, address, email address, and telephone number of the attorney representing Republic of Kazakhstan, who issues or requests this subpoena, are:

Bob L. Olson, Esq. and Erin M. Gettel, Esq., Snell & Wilmer L.L.P., 1700 South Pavilion Center Drive, Suite 700, Las Vegas, Nevada 89135; Phone: (702) 784-5200

---

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE

**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: ______________________________
on *(date)* ____________________.

☐ I served the subpoena by delivering a copy to the named person as follows: ______________________________
______________________________________________________________________________
______________________________ on *(date)* ____________________; or

☐ I returned the subpoena unexecuted because: ______________________________
______________________________________________________________________________

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $____________________.

My fees are $______________ for travel and $______________ for services, for a total of $_____________.

I declare under penalty of perjury that this information is true and correct.

Date: ____________________

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition hearing, or trial.

*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises – or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the servicing party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

. . .

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## EXHIBIT "A": ITEMS TO BE PRODUCED

### I. DEFINITIONS.

1. "You" "Your", or "Yourself" means the person to whom this subpoena is directed.

2. "Accounts" means any detailed statement of the mutual demands in the nature of debit and credit between parties, arising out of contracts or some fiduciary relation including; (a) a statement in writing, of debits and credits, or of receipts and payments; (b) a list of items of debits and credits, with their respective dates; (c) a statement of pecuniary transactions; (d) a record or course of business dealings between parties; (e) a list or statement of monetary transactions such as payments, losses, sales, debits, credits, etc.; (f) any account with a bank or other financial institution including any deposit, credit, demand, time, savings, passbook, share draft, checking, interest, brokerage, mutual funds, money market, and stock accounts; (g) any certificates of deposit; (h) accounts receivable; and (i) any right to payment for goods sold or leased or for services rendered.

3. "Arbital Award" means the arbital award rendered in favor of ROK and against Big Sky EC, in ICSID Case No. ARB/17/22 on November 24, 2021, in the amount of USD $575,821.71, together with interest at a rate of 12-month USD LIBOR + 2.0%, compounded annually, which shall accrue from 60 days after the date of the Arbital Award until the date upon which payment is made.

4. "Arbitration Funding Agreement" means the Arbitration Funding Agreement among Vannin Capital PCC, Agrima Limited, Big Sky Energy Corporation, Big Sky Energy Kazakhstan Limited, Big Sky Energy Atyrau Limited and Fietta.

5. "Big Sky EC" refers to Big Sky Energy Corporation, a Nevada corporation, the Defendant and judgment debtor in the above captioned litigation.

6. "Big Sky Kazakhstan" refers to Big Sky Energy Kazakhstan Ltd., an Alberta Corporation, believed to have a registered office at 145-251 Midpark Blvd. SE, Calgary, Alberta, Canada, T2X1S3.

7. "Boucher" means Thomas M. Boucher of Ingalls.

8. Communications. The terms "Communication" or "communications," as used herein, shall be construed in the broadest sense, and include without limitation any meeting, conversation, correspondence, memoranda, email, facsimile, discussion, negotiation, telephone conversation, or any other occurrence whereby thoughts, opinions, or data is transmitted between two or more persons.

9. "Convertible Note Purchase Agreement" means the Convertible Note Purchase Agreement between Ingalls and Big Sky EC dated June 20, 2006.

10. "Danforth" refers to Jacqueline R. Danforth, believed to have an address of 79 Heritage Cove, Heritage Pointe, Alberta, Canada T1S4J1.

11. "Default Judgement" shall mean the Default Judgement entered in the above captioned case on July 28, 2022, in favor of ROK and against Big Sky EC in the amount of $587,030.43.

12. Documents. The terms "Document" or "documents" as used herein. are used in their broadest sense, and mean and include each and every medium upon which information is or can be printed, typed, written, recorded, reproduced, or stored by mechanical or electronic means, by hand or by any other method, whether by you or someone else, that is or has been within your possession, custody, control or of which you have knowledge or access, including, without limitation, the following: advertisements; agreements; aperture cards; appointment books; books; blueprints; brochures; calculations, calendars; charts; circulars; codes; computer records or printouts; communications; contracts; copies; correspondence; data processing cards, discs or tapes; diaries; directives; drafts; drawings; email; enclosures; file folders, boxes or other containers; files; films; forms; graphs; guides; indexes; inspection reports; instructions; journals; laboratory reports; ledgers; letters; local, state and federal government hearing records and reports; magnetic tapes, cards, or discs or other products of any device for recording sound or electronic impulses; maps; memoranda; messages, microfiche; microfilm; minutes or other records of meetings or conferences; motion picture films; negatives; newspaper stories or clippings; notes; notebooks; notices; opinions or reports of consultants; pads; pamphlets; photographs; pictures; plans; position papers; press releases; price books or lists; progress reports; publications; reports; reports of studies; specifications; statistical data; schedules; schedule revisions; sketches; status reports; stenographic or handwritten notes; stenographic, wire, or magnetic recordings; studies; summaries; summaries, notes or records of conversations, interviews, or telephone conversations; summaries or reports of investigations or negotiations; surveys; specifications; telecopies; telegrams; telexes; time records; trip reports; videotapes; voice recordings in any form; worksheets; and working papers. The terms "document" or "documents" also include the original and every copy which is not identical to the original, specifically including every copy that contains any commentary, marginalia or notation whatsoever that does not appear on the original. Unless provided otherwise, the terms "document" or "documents" also include all drafts, attachments, and appendices of each of the foregoing.

13. "Geo-Jade" shall mean Geo-Jade Petroleum, the company that acquired Kozhan.

14. "Heysel" shall mean Matthew Heysel.

15. "Ingalls" refers to Ingalls & Snyder Value Partners L.P., believed to have an address at 61 Broadway, New York, NY 10006.

16. "ILS" means International Legal Services, Inc., a Belize corporation.

17. "ILS Note" means that promissory note from Big Sky EC to ILS in the amount of $430,714.83.

18. "Israel" shall mean Daniel Israel.

19. "Kozhan" shall mean KoZhan LLP, a company incorporated in Kazakhstan.

20. "Lawler" refers to William Scott Lawler, aka W. Scott Lawler, believed to have an address of 3133 W. Frye Road, Suite 101, Chandler, Arizona, 85226.

21. "Litigation" refers to the above captioned litigation.

22. "Person" as used herein means any natural person or any entity, including without limitation any individual, present and former director, officer, employee, contractor, firm, corporation, company, joint venture, trust, tenancy, association, partnership, business, agency,

department, bureau, board, commission, or any other form of public, private, governmental, or other legal entity. Any reference herein to any public or private company, partnership, association, or other governmental or non-governmental entity includes such entity's subsidiaries, affiliates and divisions, as well as the present and former directors, officers, employees, attorneys, agents and anyone acting on behalf of, at the direction of, or under the control of the entity, its subsidiaries, its affiliates, or its divisions.

23. "Property" or "Properties" means anything that is the subject of ownership, including but not limited to tangible and intangible property, cash, cash equivalents, securities, and both real and personal property.

24. "Related to," "relating to," or "concerning" as used herein mean containing, consisting of, referring to, reflecting, supporting, prepared in connection with, used in preparation for, pertaining to, having any relationship to, evidencing, or constituting evidence of, or being in any way legally, logically, or factually connected with the matter discussed in whole or in part.

25. "ROK" refers to Plaintiff Republic of Kazakhstan.

26. "Vannin" refers to Vaninn Capital PCC, and any of its subsidiaries and affiliates.

27. The definitions set forth above shall apply without regard for whether they are capitalized in a given instruction or request.

## II. INSTRUCTIONS.

1. The documents to be produced shall encompass all documents: (i) in your possession, custody, or control; or (ii) in the possession, custody, or control of consultants or other representatives or agents retained by you or your attorneys.

2. The documents to be produced shall be those from January 1, 2015, through the present, unless otherwise stated.

3. Each document request shall be deemed to call for the production of the original document or documents or a true and correct copy thereof without redactions or deletions.

4. Each document request seeks production of each document in its entirety, including all attachments, drafts, and non-identical copies of each document.

5. If an objection is made to only part of a document request, documents responsive to the remaining parts shall be produced.

6. If you refuse to answer a request in whole or in part or fail to produce any requested documents, you shall describe in detail the basis for such refusal to answer or respond. You are specifically requested to identify and list all documents called for by this request but withheld from production on the grounds of privilege. All such documents shall be retained intact pending a ruling by the Court on a claim of privilege. Pursuant to Federal Rule of Civil Procedure 45(e)(2)(A), "a person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) Expressly make the claim; and

(ii) Describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."

7. If any documents requested herein have been lost, discarded, or destroyed, the document so lost, discarded, or destroyed shall be identified as completely as possible, including by the provision of the following information:

a. date of disposal or loss;

b. manner of disposal;

c. reason for disposal or explanation of loss;

d. Person authorizing the disposal;

e. Persons having knowledge of the disposal or loss; and

f. Persons disposing of the document.

8. In construing any document request, the singular form of a word shall be interpreted as including the plural and the plural as including the singular, as necessary to bring within the scope of the document request any information or documents that might otherwise be construed to be outside its scope.

9. In construing any document request, whenever appropriate, "and" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request any information that might otherwise be construed to be outside its scope.

10. In construing any document request, "all" shall mean "any and all," unless the content requires otherwise, and whenever appropriate "all" shall be construed to include "all," "every," and "each" as necessary to bring within the scope of the document request any information that might otherwise be construed to be outside its scope.

11. All documents are to be produced as they are kept in the ordinary course of business.

12. All documents produced should be Bates labeled as follows:

a. Each searchable PDF or image (TIF) file should be named by its beginning Bates number and should contain consecutive Bates labels on each page in a location, preferably on the lower right-hand corner of the page, that will not obstruct any text, handwriting or images; and

b. Excel spreadsheets and PowerPoint presentations (or other native files) should be named using a Bates number, with a corresponding Bates number placeholder in the document production.

13. The document requests shall be deemed continuing in nature so as to require prompt amendment and supplementation in accordance with Fed. R. Civ. P. 26(e). If any additional documents responsive to the document requests come into your possession, custody, or control, you are requested to produce any such additional documents promptly thereafter. If any such additional documents or any portion thereof are withheld from production upon a claim of privilege or other ground, you are requested to amend your privilege and/or redactions log promptly, as appropriate.

14. Unless otherwise indicated, the time period applicable to all document requests herein shall be from September 30, 2015, to the present. All responsive documents dated, prepared, drafted, sent, obtained, or received during, or that refer to or concern, such time period shall be produced.

15. The Instructions and Definitions set forth above shall apply to each individual document request set forth below.

16. To the extent that any documents requested herein were produced without redactions in the arbitration between Plaintiff and Big Sky Kazakhstan, you may refer to the documents that were previously produced by document number of bate stamp rather than producing a copy of such documents. If redacted documents were produced in the arbitration between Plaintiff and Big Sky Kazakhstan, produce unredacted copies of those documents.

## III. SPECIFIC DOCUMENT REQUESTS.

1. Please produce all documents and communications in Your possession, custody or control that relate to ILS and the ILS Note including, without limitation all

a. payments and advances ILS directly or indirectly made to Lawler, Big Sky EC, Big Sky Kazakhstan;

b. all payments and advances ILS directly or indirectly made to any third parties such as vendors and consultants on behalf of Lawler, Big Sky EC and Big Sky Kazakhstan;

c. all payments made to ILS, including payments on the ILS Note, by Lawler, Big Sky EC, Big Sky Kazakhstan;

d. all payments made to ILS, including payments on the ILS Note, by any person or entity acting on behalf of Lawler, Big Sky EC and Big Sky Kazakhstan;

e. all promissory notes, contracts and agreements between ILS and any of Lawler, Big Sky EC and Big Sky Kazakhstan, including without limitation the ILS Note, pledge agreements, security agreements and UCC financing statements;

f. all Communications between ILS and any of Lawler, Big Sky EC, Big Sky Kazakhstan and Ingalls;

g. all notices of default under the ILS Note;

h. all computations of the amount owed on the ILS Note regardless of date such computations were prepared;

i. all notices of foreclosure sales, sheriff's sales, UCC sales, public sales, private sales or similar sales of any collateral securing payment of the ILS Note;

j. all notices of foreclosure sales, sheriff's sales, UCC sales, public sales, private sales or similar sales of any security interest ILS has or may have had in the equity interests of Big Sky Kazakhstan;

k. all documents related to the transfer of any legal or equitable interest of Big Sky Kazakhstan to Ingalls and/or ILS or any of their affiliates, subsidiaries, assignees, transferees or nominees;

l. all documents related to the assumption of control, direct or indirect, by ILS and/or Ingalls over Big Sky EC and/or Big Sky Kazakhstan; and

m. all intercreditor agreements or similar agreements between ILS and Ingalls; and

n. any instructions from Ingalls and/or ILS to Lawler regarding actions Lawler was to take in the capacity as a director of Big Sky EC and/or Big Sky Kazakhstan.

2. Please produce all documents and communications in Your possession, custody or control that relate to Vannin and the Arbitration Funding Agreement including, without limitation all

a. payments and advances Vannin directly or indirectly made to Lawler, Big Sky EC, Big Sky Kazakhstan;

b. all payments and advances Vannin directly or indirectly made to any third parties such as vendors and consultants on behalf of Lawler, Big Sky EC and Big Sky Kazakhstan; and

c. all Communications between Vannin and any of Lawler, Big Sky EC and Big Sky Kazakhstan.

3. Please produce all documents contained in that Unanimous Written Consent of the Board of Directors of Big Sky Energy Corporation dated September 16, 2013, attached hereto as **Exhibit "1."**

4. Please produce all documents and communications in Your possession, custody or control that relate to Ingalls and the Convertible Note Purchase Agreement, without limitation all:

a. payments and advances Ingalls directly or indirectly made to Lawler, Big Sky EC, Big Sky Kazakhstan;

b. all payments and advances Ingalls directly or indirectly made to any third-parties such as vendors and consultants on behalf of Lawler, Big Sky EC and Big Sky Kazakhstan;

c. all payments made to Ingalls, including payments on the Convertible Note Purchase Agreement or any related promissory notes by Lawler, Big Sky EC, Big Sky Kazakhstan;

d. all payments made to Ingalls, including payments on the Convertible Note Purchase Agreement and or related promissory notes, by any person or entity acting on behalf of Lawler, Big Sky EC and Big Sky Kazakhstan;

e. all promissory notes, contracts and agreements between Ingalls and any of Lawler, Big Sky EC and Big Sky Kazakhstan, including without limitation the ILS Note, pledge agreements, security agreements and UCC financing statements;

f. all Communications between Ingalls and any of Lawler, Big Sky EC, Big Sky Kazakhstan and ILS;

g. all notices of default under the Convertible Note Purchase Agreement or any other contract or agreement between Big Sky EC and Ingalls;

h. all computations of the amount owed by Big Sky EC to Ingalls, regardless of date such computations were prepared;

i. all notices of foreclosure sales, sheriff's sales, UCC sales, public sales, private sales or similar sales of any collateral securing payment of the Convertible Note Purchase Agreement or any other contract between Big Sky EC and Ingalls;

j. all notices of foreclosure sales, sheriff's sales, UCC sales, public sales, private sales or similar sales of any security interest ILS has or may have had in the equity interests of Big Sky Kazakhstan;

k. all documents related to the transfer of any legal or equitable interest of Big Sky Kazakhstan to Ingalls and/or ILS or any of their affiliates, subsidiaries, assignees, transferees or nominees;

l. all documents related to the assumption of control, direct or indirect, by ILS and/or Ingalls over Big Sky EC and/or Big Sky Kazakhstan; and

m. all intercreditor agreements or similar agreements between ILS and Ingalls;

n. any instructions from Ingalls and/or ILS to Lawler regarding actions Lawler was

to take in the capacity as a director of Big Sky EC and/or Big Sky Kazakhstan.

5. Please produce all corporate records of Big Sky EC including, without limitation, its:

a. Articles of Incorporation;

b. Bylaws;

c. Minutes;

d. Corporate resolutions;

e. Unanimous consents;

f. Shareholder ledgers;

g. Documents regarding the election of officers and directors; and

h. Its other records.

6. Please produce all documents evidencing the circumstances in which, and the reasons why, Mr. Lawler was appointed (and chosen to be appointed) as Big Sky EC's sole director in March 2013.

7. Please produce all Communications between Big Sky EC and Lawler.

8. Please produce all Communications from Big Sky EC to any person or entity regarding Lawler.

9. Please produce all Communications from Lawler to any person or entity regarding Big Sky EC.

10. Please produce all Communications between Big Sky EC and Danforth.

11. Please produce all Communications from Big Sky EC to any person or entity regarding Danforth.

12. Please produce all Communications from Danforth to any person or entity regarding Big Sky EC.

13. For each and every Account held by or for the benefit of Big Sky EC, please produce:

a. information to identify the obligee and obligor on the account;

b. the agreement from which the account arose and other account-related agreement;

c. all account-related correspondence;

d. all statements, whether issued weekly, monthly, quarterly or annually; and

e. all account statement reconciliations prepared by Lawler, Big Sky EC, Big Sky Kazakhstan, or any of their consultants, professionals, representatives, book-keepers and accountants.

14. Please produce all corporate records of Big Sky Kazakhstan including, without limitation, its:

a. Articles of incorporation or organization;

b. Bylaws and/or operating agreements;

c. Minutes;

d. Resolutions;

e. Unanimous consents;

f. Shareholder ledgers;

g. Documents regarding the election of officers and directors; and

h. Its other records.

15. Please produce all Communications between Big Sky Kazakhstan and Lawler.

16. Please produce all Communications between Big Sky Kazakhstan and any person or entity regarding Lawler.

17. Please produce all Communications between Lawler and any person or entity regarding Big Sky Kazakhstan.

18. Please produce all Communications between Big Sky Kazakhstan and Danforth.

19. Please produce all Communications between Big Sky Kazakhstan and any person or entity regarding Danforth.

20. Please produce all Communications between Danforth and any person or entity regarding Big Sky Kazakhstan.

21. For each and every Account held by or for the benefit of Big Sky Kazakhstan, please produce:

a. information to identify the obligee and obligor on the account;

b. the agreement from which the account arose and other account-related agreement;

c. all account-related correspondence;

d. all statements, whether issued weekly, monthly, quarterly or annually; and

e. all account statement reconciliations prepared by Lawler, Big Sky EC, Big Sky Kazakhstan, or any of their consultants, professionals, representatives, book-keepers and accountants.

22. All documents regarding any cash or cash equivalents held by Big Sky EC.

23. All documents regarding any deposits held by third parties of funds or Property of Big Sky EC.

24. All documents regarding any accounts receivable of Big Sky EC.

25. All documents regarding investments of Big Sky EC including, but not limited to, the following:

a. Mutual funds;

b. Publicly traded stock;

c. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, joint venture and corporation; and

d. Government bonds, corporate bonds, and other negotiable and non-negotiable instruments.

26. All documents regarding inventory of Big Sky EC including:

a. Raw materials;

b. Work in progress;

c. Agricultural products including crops, planted or harvested, farm animals, fishing related property;

d. Extracted and unextracted minerals such as gold, silver, copper, aluminum, rare earth minerals, oil, gas, coal and uranium;

e. Finished goods, including goods held for resale; and

f. Other inventor or supplies.

27. All documents regarding fixtures owned, leased or possessed by Big Sky EC.

28. All documents regarding furniture owned, leased or possessed by Big Sky EC.

29. All documents regarding machinery and equipment, including without limitation construction, farming and mining equipment, leased or possessed by Big Sky EC.

30. All documents regarding any automobiles such as vans, trucks, motor vehicles and titled farm vehicles owned, leased or possessed by Big Sky EC.

31. All documents regarding any watercraft such as boats, motors, trailers and accessories owned, possessed or leased by Big Sky EC.

32. All documents regarding any aircraft and accessories owned, possessed or leased by Big Sky EC.

33. All documents regarding collectibles owned, leased, or possessed by Big Sky EC.

34. All documents regarding intellectual property owned, leased or possessed by Big Sky EC including without limitation:

a. Patents, copyrights, trademarks, and trade secrets;

b. Internet domain names and websites;

c. Licenses, franchises and royalties;

d. Customer lists, mailing lists, or other compilations;

e. Other intangibles or intellectual property; and

f. Goodwill.

35. All documents regarding any notes receivable of Big Sky EC.

36. All documents regarding any tax refunds and unused net operating losses of Big Sky EC.

37. All documents regarding any interest in insurance policies or annuities held by Big Sky EC.

38. All documents regarding any beneficial interests of Big Sky EC in any insurance policies or annuities.

39. All documents regarding any beneficial interests of Big Sky EC in any trusts.

40. All documents regarding any cause of action Big Sky EC has against any third parties, whether or not a lawsuit has been filed.

41. All documents regarding Property, whether personal property or real property, Big Sky EC has sold, transferred, conveyed, encumbered or hypothecated within the last five years.

42. All documents regarding Property, whether personal property or real property, Big Sky EC has sold, transferred, conveyed, encumbered or hypothecated to a trust within the last eleven years.

43. All depreciation schedules for any Property owned, leased or possessed by Big Sky EC.

44. All appraisals of any Property owned, leased or possessed by Big Sky EC.

45. All documents related to any interest of Big Sky EC in any real property, wherever located, including:

a. Deeds;

b. Leases;

c. Licenses;

d. Joint Venture Agreements;

e. License Agreements;

f. Rights to any mineral or water rights;

g. Other agreements creating any interest in any nature whatsoever in real property.

46. All documents regarding any interest of Big Sky EC in any other entity, including without limitation Big Sky Kazakhstan, including:

a. Partnership agreements;

b. Operating agreements;

c. Joint venture agreement;

d. Articles of incorporation;

e. Articles of organization;

f. Minutes;

g. Resolutions;

h. Unanimous Consents; and

i. Other consents to actions taken by such entities.

47. All documents regarding the transfer of any interest, legal, equitable or otherwise, in Big Sky Kazakhstan to Ingalls and/or ILS.

48. All communications between Ingalls, and any representative of Ingalls including Boucher, and Big Sky EC.

49. All communications between Ingalls, and any representative of Ingalls including Boucher, and Big Sky Kazakhstan.

50. All communications between Ingalls, and any representative of Ingalls including Boucher, and Lawler.

51. All communications between Ingalls, and any representative of Ingalls including Boucher, and Danforth.

52. All communications between Israel and/or Heyse, on the one hand, and Big Sky EC and Big Sky Kazakhstan on the other hand.

53. All communications between Israel and/or Heysel and Lawler.

54. All communications between Israel and/or Heysel, on the one hand, Ingalls, ILS and/or Vannin on the other hand.

55. A copy of the arbitration award in favor of Big Sky Kazakhstan and Kozhan and/or Geo-Jade.

56. A copy of the settlement agreement or similar agreement between Big Sky Kazakhstan and Kozhan and/or Geo-Jade.

57. All communications to and from Kozan and Geo-Jade regarding the arbitration award entered in favor of Big Sky Energy Kazakhstan.

## IV. RULE 30(b)(6) TOPICS

1. The documents requested above that are within your custody and control, including their location and the information contained therein.

2. All matters related to ILS including, without limitation:

   a. the relationship between Big Sky EC and ILS;

   b. all transactions between Big Sky EC and ILS;

   c. the ILS Note;

   d. all Communications between Big Sky EC and ILS;

   e. all advances made by ILS on the ILS Note,

   f. all payments made on the ILS Note;

   g. The transfer of any interest, legal or equitable, in Big Sky Kazakhstan to Ingalls and/or ILS

   h. all foreclosure sales, UCC sales, sheriff's sales, private sales and public sales of any collateral pledged to ILS including without limitation the ownership interests in Big Sky Kazakhstan;

   i. the relationship between ILS and Ingalls;

   j. all intercreditor and similar agreements between ILS and Ingalls; and

   kj. all other transactions related to the ILS Note.

3. All matters related to Vannin including, without limitation:

   a. the relationship between Big Sky EC and Vannin;

   b. all transactions between Big Sky EC and Vannin;

   c. the Arbitration Funding Agreement;

   d. all advances made by Vannin on the Arbitration Funding Agreement;

   e. all payments made on the Arbitration Funding Agreement; and

   f. all other transactions related to the Arbitration Funding Agreement.

4. All matters related to Ingalls including, without limitation:

   a. the relationship between Big Sky EC and Ingalls;

   b. all transactions between Big Sky EC and Ingalls;

c. the Convertible Note Purchase Agreement;

d. all Communications between Big Sky EC and Ingalls, including without limitation communications involving Boucher, Lawler and Danforth;

e. all advances made by Ingalls on the Convertible Note Purchase Agreement;

f. all payments made on the Convertible Note Purchase Agreement;

g. The exercise of any rights by Ingalls under the Convertible Note Purchase Agreement;

h. The transfer of any interest, legal or equitable, in Big Sky Kazakhstan to Ingalls and/or ILS;

i. all foreclosure sales, UCC sales, sheriff's sales, private sales and public sales of any collateral pledged to ILS including without limitation the ownership interests in Big Sky Kazakhstan;

j. the relationship between ILS and Ingalls;

k. all intercreditor and similar agreements between ILS and Ingalls; and

l. All other transactions related to the Convertible Note Purchase Agreement.

5. The Unanimous Written Consent of the Board of Directors of Big Sky Energy Corporation dated September 16, 2013, attached hereto as **Exhibit "1."**

6. The corporate records of Big Sky EC including, without limitation, its:

- Articles of Incorporation;
- Bylaws;
- Minutes;
- Corporate resolutions;
- Unanimous consents;
- Shareholder ledgers;
- Documents regarding the election of officers and directors; and
- its other records.

7. The transactions and relationship between Lawler and Big Sky EC including, without limitation:

- Lawler's representation of Big Sky EC;
- Lawler serving as an officer, director, manager, registered agent or other non-legal representative of Big Sky EC;
- all Communications between Big Sky EC and Lawler;
- all Communications from Big Sky EC to any person or entity regarding Lawler; and
- all Communications from Lawler to any person or entity regarding Big Sky EC.

8. The transactions and relationship between Danforth and Big Sky EC including, without limitation:

- Danforth's representation of Big Sky EC;

- Danforth serving as an officer, director, manager, registered agent or other non-legal representative of Big Sky EC;
- all Communications between Big Sky EC and Danforth;
- all Communications from Big Sky EC to any person or entity regarding Danforth; and
- all Communications from Danforth to any person or entity regarding Big Sky EC.

9. The corporate records of Big Sky Kazakhstan including, without limitation, its:
   - Articles of incorporation or organization;
   - Bylaws and/or operating agreements;
   - Minutes;
   - Resolutions;
   - Unanimous consents;
   - Shareholder ledgers;
   - Documents regarding the election of officers and directors; and
   - Its other records.

10. All assets of Big Sky EC including those categories of assets identified in document requests 13 and 24-46, above.

11. All liabilities of Big Sky EC.

12. All matters related to Israel.

13. All matters related to Heysel.

14. All matters related to Kozhan and/or Geo-Jade.

15. All matters related to the arbitration award Big Sky Kazakhstan obtained against Kozhan and/or Geo Jade.

16. All matters related to settlement of the arbitration award Big Sky Kazakhstgan obtain against Kozhan and/or Geo Jade.

Honorable Hilary L. Barnes
United States Bankruptcy Judge

Entered on Docket
August 29, 2025

Bob L. Olson, Esq. (Nevada Bar No. 3783)
Erin M. Gettel, Esq. (Nevada Bar No. 13877)
SNELL & WILMER L.L.P.
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 784-5200
Facsimile: (702) 784-5252
Email: bolson@swlaw.com
egettel@swlaw.com

*Attorneys for Republic of Kazakhstan*

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>BIG SKY ENERGY CORPORATION,<br><br>Debtor. | Case No. 25-50445-hlb<br><br>Chapter 7<br><br>**ORDER GRANTING *EX PARTE* MOTION FOR ORDER REQUIRING THE 30(B)(6) WITNESS OF BIG SKY ENERGY CORPORATION TO APPEAR FOR EXAMINATION PURSUANT TO FED. R. BANKR. P. 2004** |

This Court having reviewed the *Ex Parte* Motion for Order Requiring the 30(b)(6) Witness of Big Sky Energy Corporation to Appear for Examination Pursuant to Fed. R. Bankr. P. 2004 ("Motion") submitted by Republic of Kazakhstan and good cause appearing therefore,

**IT IS HEREBY ORDERED** that the Motion is GRANTED;

**IT IS FURTHER ORDERED** that the **30(b)(6) Witness of Big Sky Energy Corporation** shall appear for an examination under oath regarding the Debtor's assets, liabilities, and financial condition, before a certified court reporter at a time, place and date to be mutually agreed upon by the parties, or if no such agreement is reached, upon no less than fourteen (14) calendar days written notice by Republic of Kazakhstan.

Case 25-50445-hlb Doc 217 Entered 08/29/25 11:27:30 Page 2 of 20

**IT IS FURTHER ORDERED** that oral examination shall continue from day to day, as necessary.

**IT IS SO ORDERED.**

SNELL & WILMER L.L.P.

*/s/ Bob L. Olson*
Bob L. Olson (NV Bar No. 3783)
Erin M. Gettel (NV Bar No. 13877)
1700 South Pavilion Center Drive, Suite 700
Las Vegas, NV 89135
Telephone: (702) 784-5200
Facsimile: (702) 784-5252

*Attorneys for Republic of Kazakhstan*

###

Snell & Wilmer L.L.P. LAW OFFICES 1700 South Pavilion Center Drive, Suite 700 Las Vegas, Nevada 89135 702.784.5200