**E-filed: October 21, 2025**

Bob L. Olson, Esq. (Nevada Bar No. 3783)
Erin M. Gettel, Esq. (Nevada Bar No. 13877)
SNELL & WILMER L.L.P.
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 784-5200
Facsimile: (702) 784-5252
Email: bolson@swlaw.com
egettel@swlaw.com

*Attorneys for Republic of Kazakhstan*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>BIG SKY ENERGY CORPORATION,<br><br>Debtor. | Case No. 25-50445-hlb<br><br>Chapter 7<br><br>**OPPOSITION TO OBJECTION TO SUBPOENAS AND MOTION TO QUASH OR MODIFY SUBPOENAS AND FOR PROTECTIVE ORDER (ECF NO. 32)**<br><br>**Hearing Date: October 31, 2025**<br>**Hearing Time: 10:30 a.m.** |

Republic of Kazakhstan ("Kazakhstan" or "Creditor") by and through its attorneys, Snell & Wilmer L.L.P., submits its opposition to Debtor Big Sky Energy Corporation's ("Big Sky") Objection to Subpoenas and Motion to Quash or Modify Subpoenas and for Protective Order ("Motion").[1] This Opposition is supported by the following Memorandum of Points and Authorities, the pleadings and papers on file herein, and any oral argument the Court may entertain.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Big Sky spends the first 18 pages of its 30-page[2] Motion providing inaccurate and irrelevant "Underlying Case History." In a nut shell, Big Sky claims that a group of so-called powerful oligarchs used the Kazakh court system to steal its then-subsidiary, Big Sky Energy Kazakhstan

[1] ECF No. 32.
[2] This Motion is ten pages longer than allowed by LR 9014(e).



Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

Ltd's ("Big Sky Canada"), interest in a lucrative Kazakh company called Kozhan.[3] Big Sky asserts that the Kazakh courts' decisions violated an international treaty, which claims Big Sky Canada will pursue in a "Forthcoming Arbitration."[4] According to Big Sky, Kazakhstan is improperly attempting to use *the bankruptcy that Big Sky initiated in order to avoid having to disclose documents it was previously ordered to produce* to seek discovery for use in the recently revealed "Forthcoming Arbitration." This is logically and chronologically impossible because:

(i) Kazakhstan has been requesting these same documents in post-judgment discovery for more than a year (i.e. long before the so-called Forthcoming Arbitration was first threatened by Big Sky Canada earlier this year) and already has the documents it would need to defend the Forthcoming Arbitration as it already defeated these *very same* claims in the underlying arbitration brought by Big Sky.

(ii) Big Sky has filed motions to quash prior subpoenas in the United States District Courts for Nevada and Arizona. Both of those motions were denied,[5] and the Arizona District Court already ordered Big Sky to produce these same documents and a privilege log.[6]

(iii) Kazakhstan and Big Sky stipulated to extend the deadline for serving the privilege log three times to allow the parties to continue settlement discussions.[7] It was during these settlement discussions that Kazakhstan learned of the Forthcoming

---

[3] ECF No. 32 at 1–8.

[4] *Id.* at 12–13.

[5] A true and correct copy of the August 23, 2024, Order issued by the Nevada District Court denying Big Sky's request to quash subpoenas without prejudice is attached hereto as **Exhibit A** (Order Denying Motion to Quash in Enforcement Action).

[6] A true and correct copy of the January 24, 2025, Order issued by the Arizona District Court denying Big Sky's request to quash the subpoenas is attached hereto as **Exhibit B** (Order Denying Motion to Quash in Arizona Action). After stating that information related to information about where Big Sky's assets may be located is relevant, the Court ordered Big Sky to serve Kazakhstan with a privilege log by February 24, 2025. That deadline was ultimately extended by stipulation of the parties to April 25, 2025, then to May 6, 2025, and finally to May 16, 2025, to allow the parties to discuss settlement. *See* **Exhibits C, D and E** (First, Second, and Third Orders Continuing Deadline to Produce in Arizona Action). Big Sky filed its bankruptcy petition on May 15, 2025—just one day before the extended deadline for producing its privilege log.

[7] *Id.*



Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

Arbitration— an arbitration that will raise the same issues that were decided in Kazakhstan's favor and against Big Sky in the November 24, 2021, International Center for Settlement of Investment Disputes Award (the "Award").[8]

(iv) Lawler has admitted that Big Sky filed for bankruptcy in order to avoid disclosing these documents to Kazakhstan.[9]

Kazakhstan is not improperly using this bankruptcy to obtain documents for the Forthcoming Arbitration; rather, Big Sky is using this bankruptcy to improperly avoid producing documents it was previously ordered to produce, apparently to avoid discovery into its assets. In the Motion, Big Sky represents that it lost its interest in Big Sky Canada in 2022.[10] Kazakhstan is attempting to investigate whether that transfer, and likely other similar transfers, are avoidable under the Bankruptcy Code and state law. Big Sky Canada's Shareholder Register reflects that Debtor transferred its interest in Big Sky Canada to Ingalls & Snyder Value Partners L.P. ("Ingalls & Snyder") in April 2022[11]—less than one month after Kazakhstan instituted enforcement proceedings to enforce the Award in the District of Nevada.[12] In July 2023, Ingalls & Snyder transferred a portion of the shares to Lawler.[13] Suffice it to say that the timing of these transfers makes them highly suspect.

This bankruptcy and the instant Motion are nothing more than Big Sky's latest attempt to avoid discovery into its assets, run out the clock for avoiding fraudulent transfers, and ultimately, to avoid paying the judgment. Big Sky and its sole officer and director Lawler have consistently refused to produce the requested documents for more than a year.[14] Big Sky has already raised and

---

[8] ECF No. 32-5.

[9] *See* **Exhibit F** (Transcript of June 18, 2025, Meeting of Creditors) at 14.

[10] ECF No. 32 at 3:3–4.

[11] **Exhibit G** (Big Sky Canada Shareholder Register) at 2–3 (showing that 10,000,000 shares (all of the outstanding shares) were transferred to Ingalls & Snyder on April 15, 2022, and that on July 13, 2023, 1,577,000 of those shares were transferred to Lawler).

[12] The Complaint Kazakhstan filed in Case No. 2:22-cv-00509 is attached as **Exhibit H** (Complaint in Enforcement Action).

[13] Ex. G.

[14] Big Sky states in its Motion that it has commenced a rolling production of documents that are responsive to the Subpoenas. The initial production was primarily the same documents that Big Sky attached to its Motion.

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

lost the same blanket arguments regarding privilege, as well as its recycled and conclusory arguments based on relevance, breadth, and burden. Big Sky's and Lawler's continued refusal to produce the requested documents together with Lawler's testimony during the creditor's meetings only confirm that they are likely hiding fraudulent transfers that could be clawed back to the debtor estate. The Motion should be denied in its entirety and any applicable attorney-client privilege should be deemed waived or cannot be asserted under the crime-fraud exception.

## II. BACKGROUND

### A. Big Sky and Lawler repeatedly refuse to produce documents in the ICSID Arbitration, necessitating the 2019 § 1782 Action.

In September 2016, Big Sky notified Kazakhstan of an investment dispute involving alleged violations of the Treaty Between the United States of America and the Republic of Kazakhstan Concerning the Encouragement and Reciprocal Protection of Investment (the "U.S.-Kazakhstan BIT" and the "ICSID Arbitration")). Big Sky's claims in the ICSID Arbitration were based on exactly the same alleged events as the Forthcoming Arbitration, i.e., the alleged oligarch/Kazakh court conspiracy.[15] In other words the so-called "Forthcoming Arbitration" is simply an attempted rerun of the arbitration Big Sky previously brought and lost against Kazakhstan, which resulted in the award and judgment that Kazakhstan has been seeking to enforce against Big Sky since 2022.

During and in connection with the ICSID Arbitration, Kazakhstan instituted a limited-purpose action pursuant to 28 USC § 1782 in the United States District Court for the District of Arizona in which it sought evidence from Lawler for use in the Arbitration, *In Re Application Pursuant to 28 USC 1782 For Discovery From William Scott Lawler*, 2:20-cv-00090-PHX-DWL ("2019 § 1782 Action").[16] In October 2019, Judge Lanza granted Kazakhstan's application for permission to serve the subpoena.[17] Because Big Sky alludes to Judge Lanza's later granting of Lawler's motion to quash that subpoena in 2020 as somehow bearing on the instant subpoenas,[18] some additional context is necessary.

---

[15] *Id.* at 13–14.
[16] The Action was originally assigned case number MC-19-35 but was converted to CV-20-90.
[17] **Exhibit I** (Order Granting Application to Serve Subpoena in 2019 § 1782 Action).
[18] ECF No. 32 at 16–17 (falsely suggesting that the requested documents were denied as improper).



Snell & Wilmer L.L.P. LAW OFFICES 1700 South Pavilion Center Drive, Suite 700 Las Vegas, Nevada 89135 702.784.5200

4928-6273-9572
4913-2770-4692

In the 2019 § 1782 Action, Kazakhstan sought evidence regarding who controlled Big Sky.[19] Kazakhstan instituted the 2019 § 1782 Action to obtain this information only after Big Sky repeatedly refused to produce it in the ICSID Arbitration despite being ordered to do so by the ICSID Tribunal. That is, contrary to Big Sky's representations that the ICSID Tribunal denied Kazakhstan's requests,[20] the ICSID Tribunal in fact granted them. Big Sky refused to comply until *after* Kazakhstan brought the 2019 § 1782 Action at which point it finally disclosed the documents in the ICSID Arbitration, which documents were the subject of both the ICSID Tribunal's order on document production and the § 1782 subpoena.

Thereafter—and on the basis that the documents requested through the § 1782 subpoena had already been disclosed in the ICSID Arbitration, essentially rendering that Action and subpoena moot[21]—Judge Lanza granted Lawler's motion to quash. Thus, Big Sky's characterization of the instant subpoenas as an impermissible third attempt to obtain forbidden documents under false pretenses is disingenuous at best.

Snell & Wilmer L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

### B. The ICSID Arbitration is resolved in Kazakhstan's favor.

On November 24, 2021, the ICSID Tribunal rejected Big Sky's claims *in their entirety* and issued the Award in Kazakhstan's favor. Contrary to Big Sky's representations, the Tribunal did not confirm the alleged breaches that it claims will support the Forthcoming Arbitration. Rather, the ICSID Tribunal found none of the judicial conduct "*to be actionable i.e. wrongful under international law.*"[22] In the Motion, Big Sky has included a handful of self-serving and incomplete quotations, which are taken entirely out of context and do not properly reflect the ICSID Tribunal's findings in the Award. The ICSID Tribunal ultimately found that the Kazakh Courts had not

---

[19] **Exhibit J** (Kazakhstan's Memorandum of Law in Support of Application to Serve Subpoena in 2019 § 1782 Action) at 5; **Exhibit K** (Subpoena in 2019 § 1782 Action).
[20] ECF No. 32 at 16.
[21] Ex. I at 4 (Explaining, in granting request for issuance of subpoena, that "the Centre is receptive to the requested discovery," as it "had previously ordered Big Sky to produce similar information but Big Sky failed to do so"), **Exhibit L** (Order Granting Motion to Quash in 2019 § 1782 Action) at 13 (Explaining, in later granting motion to quash subpoena, that the landscape had changed dramatically because Big Sky produced the very documents Kazakhstan wished to compel Lawler to produce shortly after Kazakhstan filed its § 1782 Application in October of 2019).
[22] ECF No. 32-5 at ¶ 537.

engaged in any wrongful conduct in their application of relevant laws and that none of the conduct complained of was unlawful under international law.[23] Thus, like its characterization of the above document dispute, Big Sky's interpretation of the ICSID Tribunal's Award is disingenuous at best.

While the viability of the threatened Forthcoming Arbitration is irrelevant and not before this Court, it belies common sense that Kazakhstan is using a bankruptcy *that Big Sky initiated* to improperly seek documents to defend against claims it has already beaten. Further, this assumes that Big Sky Canada can somehow bring the same substantive claims against Kazakhstan as those raised (and lost) by its former parent Big Sky (which it cannot).

**C. Big Sky fails to appear in the enforcement proceeding and refuses to pay the Judgment.**

In March 2022, Kazakhstan filed suit in the United States District Court for the District of Nevada (Big Sky's state of incorporation) to recognize and enforce the ICSID Award ("Enforcement Action").[24] After Big Sky failed to appear or otherwise respond to the complaint, Kazakhstan moved for and obtained a default judgment against Big Sky in the full amount of the award plus applicable interest for a then-total of $587,030.43.[25] This is the valid Judgment on which Kazakhstan's instant claim in this bankruptcy case is based. Big Sky refused to make any payments toward the Judgment and claimed it had no ability to do so. Big Sky has never challenged the Judgment.

**D. Big Sky and Lawler unsuccessfully move to quash post-judgment deposition and document subpoenas.**

In January 2024, Kazakhstan subpoenaed Big Sky and Lawler pursuant to FRCP 45 and 69 to testify at a deposition in Phoenix, Arizona, and to produce documents.[26] Lawler (a lawyer) wrote to counsel for Kazakhstan raising three issues with these subpoenas: (1) the subpoenas contained

---

[23] *Id.* at ¶¶ 525 –27.

[24] *Republic of Kazakhstan v. Big Sky Energy Corp.*, 2:22-cv-00509-JCM-BNW (D. Nev. 2022); *See also* Ex. H.

[25] **Exhibit M** (Judgment in Enforcement Action).

[26] **Exhibit N** (January 3, 2024, Subpoena to Big Sky in Enforcement Action); **Exhibit O** (January 3, 2024, Subpoena to Lawler in Enforcement Action).

Snell & Wilmer L.L.P. LAW OFFICES 1700 South Pavilion Center Drive, Suite 700 Las Vegas, Nevada 89135 702.784.5200

inconsistent temporal scopes; (2) one of the items (III.2) was hard to follow; and (3) some of the requests were redundant because they sought documents previously produced in the ICSID Arbitration.[27] In response, Kazakhstan clarified the temporal scope, the ambiguity with respect to item III.2, and that items previously produced in the ICSID Arbitration need not be re-produced but should instead be referenced by bates label and unredacted copies provided, where applicable.[28]

Big Sky and Lawler subsequently retained counsel, and, due to an inability to reach an agreement for a production deadline and new deposition dates, Kazakhstan then issued amended subpoenas formalizing the above-described amendments that Kazakhstan had previously agreed to with Lawler and resetting the deposition and document-production deadlines.[29] Counsel for Big Sky and Lawler and counsel for Kazakhstan then conferred regarding the subpoenas. Kazakhstan offered to consolidate the depositions into a single deposition depending on Lawler's providing meaningful testimony,[30] while Big Sky offered to produce unspecified documents it would select purportedly demonstrating its inability to pay.

Despite Kazakhstan's clarifications and accommodations, Big Sky and Lawler continued to drag their feet. As yet another accommodation, Kazakhstan agreed to permit Big Sky and Lawler to and including July 8, 2024, to respond to the subpoenas. Big Sky produced a scant two pages reflecting only that Big Sky Canada filed its annual return for 2023 as of July of that year.[31] Big Sky then moved to quash the subpoenas and did so in the wrong forum—the District of Nevada—even though the place of compliance was in Arizona.[32] On August 23, 2024, Judge Koppe denied the motion to quash without prejudice to its refiling in the appropriate forum.[33]

In September 2024, Big Sky and Lawler moved to quash the subpoenas, this time in the United States District Court for the District of Arizona.[34] There, Big Sky raised essentially the

[27] **Exhibit P** (February 6, 2024, Letter from Lawler to Olson).
[28] **Exhibit Q** (February 14, 2024, Letter from Olson to Lawler).
[29] **Exhibit R** (June 2024 Subpoenas in Enforcement Action).
[30] The offer also contemplated that a waiver of the of the seven-hour deadline contained in FRCP 30(d)(1) may be required to complete the combined deposition.
[31] **Exhibit S** (Big Sky's Production in Response to Subpoenas in Enforcement Action).
[32] **Exhibit T** (Motion to Quash in Enforcement Action).
[33] *See* Ex. A.
[34] **Exhibit U (**Motion to Quash in Arizona Action).





Snell & Wilmer L.L.P. LAW OFFICES 1700 South Pavilion Center Drive, Suite 700 Las Vegas, Nevada 89135 702.784.5200

same arguments that it raises in the instant Motion, including that it purportedly has no assets, that it has only one officer and employee (Lawler), that the subpoenas were overbroad and unduly burdensome and improperly sought information from and regarding nonparties, and that everything Lawler touches is supposedly privileged.

*On January 24, 2025, Judge Snow denied Big Sky's and Lawler's motion to quash in its entirety.* Judge Snow rejected their blanket assertions of privilege and ordered them to serve a privilege log listing "all documents withheld on the ground of privilege against disclosure and provid[ing] information as to each document in compliance with Rule 45(e)(2)" within 30 days.[35] Judge Snow also rejected Big Sky's argument that the requested documents were not relevant because they purportedly fell outside documents related to Big Sky's ability to pay the Judgment, explaining that "[a]lthough information pertaining to Big Sky's ability to pay is relevant, so is information about where Big Sky's assets may be located."[36] The same remains true in bankruptcy.

**E. Big Sky and Lawler continue to stall and then file for bankruptcy to avoid complying with the Arizona Court's order.**

After the Arizona Court denied the motion to quash and ordered production of the privilege log, counsel for Big Sky and Lawler approached counsel for Kazakhstan regarding settlement. Counsel for Kazakhstan extended the production deadline several times in good faith and the parties unsuccessfully attempted mediation.[37] Big Sky then filed for bankruptcy one day before the third extended production deadline; Kazakhstan filed a proof of claim for the unpaid Judgment.

Lawler testified as Big Sky's representative during the meetings of creditors on June 18, and June 23, 2025. During these meetings, Lawler testified that Big Sky filed for bankruptcy to avoid preparing and producing documents as ordered by the Arizona Court.[38] He described producing the documents as a "waste of time" and admitted that no privilege log was ever prepared despite the Arizona Court's order.[39] Lawler also testified that his company, International Legal

---

[35] *See* Ex. B.
[36] *Id.* at 6.
[37] *See generally supra* FN 6 and Exs. C–E.
[38] **Exhibit F** at 14.
[39] **Exhibit V** (Transcript of June 23, 2025, Meeting of Creditors) at 7–8.



Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

Services ("ILS"), now owns Big Sky Canada (Big Sky's former wholly owned subsidiary) together with Ingalls and Snyder (i.e., Ingalls & Snyder Value Partners L.P.).[40] ILS *allegedly* acquired its interest in Big Sky Canada by foreclosing on a promissory note between ILS and Big Sky.[41] Big Sky Canada holds or held a $30M arbitration award.[42]

Although Big Sky and Lawler have not disclosed the precise date on which ILS subsequently acquired its interest in Big Sky Canada, the Shareholder Register suggests that all of the stock of Big Sky Canada was transferred to Ingalls & Snyder on April 15, 2022 approximately five months after entry of the Award and less than one month after Kazakhstan filed the Enforcement Action in Nevada.[43] Then, on July 13, 2023, Ingalls & Snyder transferred 15.77% of the Big Sky Canada stock to Lawler *not* ILS.[44] In other words, almost immediately after the commencement of the Enforcement Action, Big Sky disposed of its interest in Big Sky Canada—which appears to be the primary asset that the Trustee may be able to liquidate for the benefit of creditors. This is because, as confirmed in the Motion and also by Lawler's testimony, Big Sky Canada is or was the holder of a $30M arbitration award that it was actively seeking to enforce in Switzerland against an unrelated third party at the same time as the commencement of the Enforcement Action.

After the creditors' meetings, Kazakhstan issued subpoenas to Lawler and Big Sky pursuant to Rule 2004. These subpoenas include the same document requests as the July 2024 subpoenas that Big Sky and Lawler unsuccessfully moved to quash or modify in Arizona and that they have now been refusing to answer for more than a year and seek documents tailored to obtain information regarding the transfers of Big Sky Canada. Like the previously issued subpoenas, the instant subpoenas also seek the testimony of a corporate designee for Big Sky and of Lawler individually, although Kazakhstan has not noticed Lawler's examination. Big Sky moved to quash or modify

---

[40] *Id.* at 42–45. In the transcript, Big Sky is referred to as Big Sky Energy Corporation and Big Sky Canada is referred to as Big Sky Kazakhstan.
[41] *Id.* at 22–29.
[42] *Id.* at 36–37.
[43] *See supra* FN 11 & Ex. G.
[44] *Id.*

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

and for protective order on behalf of both Big Sky and Lawler. Big Sky's arguments were and are baseless.

## III. <u>ARGUMENT</u>

### A. Discovery under Rule 2004 is exceptionally broad and includes Big Sky's business dealings and associates.

Rule 2004 is broad and permits examination into "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge."[45] This "may properly extend to creditors and third parties who have had dealings with the debtor."[46] Courts permit broad discovery into a debtor's property transfers.[47] Discovery of matters that could establish a fraudulent transfer from the debtor "clearly fall[] within the confines" of Rule 2004.[48] As stated by one court, the scope of a Rule 2004 examination is "exceptionally broad" and is "peculiar to bankruptcy law and procedure because it affords few of the procedural safeguards that an examination under Rule 26 of the Federal Rules of Civil Procedure does."[49] Courts have stated that these examinations can be "unfettered and broad,"[50] "legitimately be in the nature of a fishing expedition,"[51] and fishing expeditions and inquisitions.[52]

Big Sky's reliance on *Millenium Labs* is misplaced because that case permitted discovery related to claims that would benefit the debtors' creditor body, distinguishing between such claims and those that would merely assist in identifying targets for private rights of action.[53] As *Millenium Labs* recognizes, possible use of the information in "collateral litigation pending in a different forum is not sufficient reason to deny an examination if it is not sought for circumventing the

---

[45] Fed. R. Bankr. P. 2004(b).
[46] *In re Fearn*, 96 B.R. 135, 137–38 (Bankr. S.D. Ohio 1989).
[47] *In re McLain Feed Yard, Inc.,* 661 B.R. 136, 142 (Bankr. N.D.Tex. Apr. 19, 2024) (document requests concerning "any transfer of property" were not overbroad where objecting party failed to specify the burden caused by the request).
[48] *In re Fearn*, 96 B.R. at 137–38.
[49] *In re Correra*, 589 B.R. 76, 108 (Bankr. N.D. Tex. 2018).
[50] *Id*.
[51] *In re Wilcher*, 56 B.R. 428, 433 (Bank N.D. Ill. 1985).
[52] *Matter of Frigitemp Corp.*, 15 B.R. 263, 264 n. 3 (Bankr. S.D. N.Y. 1981).
[53] *Millenium Lab Hldgs*, 562 B.R. 614, 627–628 (Bnkr. D. Del. 2016).

federal rules of civil procedure or bankruptcy procedure."[54] Like the permissible discovery in *Millenium Labs*, identification of transfers away from Big Sky to other persons and entities would benefit Big Sky's creditor body.

Just as Big Sky could not avoid post-judgment discovery under FRCP 69 simply by continuing to claim that it has no assets or present ability to pay, Big Sky cannot avoid Rule 2004 discovery. Likewise, Big Sky cannot avoid Rule 2004 discovery by continuing to rely on blanket assertions of privilege.

**B. Big Sky's blanket assertion of privilege was and is improper.**

Big Sky continues to make blanket assertions of privilege without providing a privilege log. Big Sky maintains that "any communications between Lawler and Big Sky[] are privileged and confidential" and thus apparently seeks to quash any communications on which Lawler is included without providing a privilege log.[55] Big Sky argues that to the extent the subpoenas seek such information, they are "are improper, bordering on an abuse of process, and must be quashed or limited."[56] Big Sky does not identify any specific requests or documents as implicating attorney-client privilege or explain how the subpoenas should be limited to avoid this.

Big Sky's continued boilerplate privilege objection does not justify the sweeping relief it seeks—as the sole case it cites demonstrates.[57] Rather, to the extent that certain requests call for some privileged documents, the proper procedure is to produce the non-privileged documents and to log documents withheld as privileged with sufficient detail to permit Kazakhstan to evaluate the claim[58]—not to quash the subpoenas.[59] This is particularly appropriate here, as many of Lawler's communications with Big Sky may not be privileged. Notably, Lawler is/was not only Big Sky's attorney, but also is/was its sole officer and director, and communications that Lawler made in his

---

[54] *In re Millennium Lab Holdings II*, 562 B.R. at 629.
[55] ECF No. 32 at 22.
[56] *Id.*
[57] *Id.* at 20 (citing *Compaq Comp. Corp. v. Packard Bell Elec.*, 163 F.R.D. 329 (N.D. Cal. 1995)).
[58] FRCP 45(e)(2).
[59] *Compaq Comp. Corp.*, 163 F.R.D. at 337–38 (explaining that movant's objection to the subpoenas "to the extent" they sought privileged documents did not satisfy Rule 45 and directing movant to serve a rule-compliant privilege log).

Snell & Wilmer L.L.P. LAW OFFICES 1700 South Pavilion Center Drive, Suite 700 Las Vegas, Nevada 89135 702.784.5200

capacity as a corporate officer or director, or for purposes of business rather than legal advice, are not privileged.[60]

Like the Arizona Court, this Court should reject Big Sky's general privilege objections, as they provide no basis to quash or modify the subpoenas.

**C. The Trustee can and should waive the attorney-client privilege as to prebankruptcy communications.**

Kazakhstan has requested the Trustee to waive the attorney-client privilege in this case. So far, the Trustee has not decided whether he will waive the attorney-client privilege.

The United States Supreme Court recognized in *Weintraub* that a bankruptcy trustee may waive a corporate debtor's "attorney-client privilege with respect to prebankruptcy communications."[61] As the *Weintraub* Court explained, there are "no federal interests that would be impaired by the trustee's control of the corporation's attorney-client privilege with respect to prebankruptcy communications."[62] By contrast, leaving the privilege in the control of the debtor's directors would frustrate an important goal of the bankruptcy laws by making it difficult for the trustee to investigate potentially avoidable transfers under 11 U.S.C. §§ 704(4), 547 and 548:[63]

> It would often be extremely difficult to conduct this inquiry if the former management were allowed to control the corporation's attorney-client privilege, and therefore to control access to the corporation's legal files. To the extent that management had wrongfully diverted or appropriated corporate assets, it could use the privilege as a shield against the trustee's efforts to identify those assets. The Code's goal of uncovering insider fraud would be substantially defeated if the debtor's directors were to retain the one management power that might effectively thwart an investigation into their own conduct.[64]

These concerns are particularly apt here where Lawler is reportedly Big Sky's attorney but also its sole officer, director, and employee and is one of the owners of Big Sky Canada. Lawler and Big Sky have been using blanket assertions of privilege to refuse to produce documents for

[60] *Dolby Lab. Licensing Corp v. Adobe, Inc.*, 402 F.Supp.3d 865, 866 (N.D. Cal. 2019) (recognizing unique role played by in-house counsel, who "'may be involved intimately in the corporation's day to day business activities and frequently serve as integral players in business decisions or activities" and that in-house counsel's business advice is not protected by attorney-client privileged).
[61] *Commodities Future Trading Commission v. Weintraub*, 471 U.S. 343, 345 (1985).
[62] *Id.* at 353.
[63] *Id.*
[64] *Id*. (citing *In re Browy*, 527 F.2d 799, 802 (8th Cir. 1976)).



Snell & Wilmer L.L.P. LAW OFFICES 1700 South Pavilion Center Drive, Suite 700 Las Vegas, Nevada 89135 702.784.5200

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

almost two years and are interfering with the investigation of Big Sky's transfer of its interests in Big Sky Canada to Lawler and or his entity ILS. Any waiver of the attorney-client privilege by the Trustee would moot any claim of privilege that Big Sky otherwise could have asserted. Further, even if the Trustee could not or declines to waive the privilege, the crime-fraud exception applies.

**D. Alternatively, the Court should review the withheld documents in-camera based on the crime-fraud exception.**

Under NRS 49.115(1), Nevada's crime-fraud exception allows documents otherwise privileged to be disclosed when "the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or a fraud." Nevada has adopted the Ninth Circuit's two-part test for determining whether the crime-fraud exception should apply.[65] Under that test, the party seeking to invoke the exception must show by a preponderance of the evidence that: (1) the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme; and (2) the attorney-client communications for which production is sought are sufficiently related to and were made in furtherance of the intended, or present, continuing illegality.[66]

"In some circumstances, the district court may determine that in-camera review of the privileged documents is necessary before deciding whether the crime-fraud exception applies."[67] In those instances, the district court must first require the moving party to show a factual basis adequate to support a good faith belief by a reasonable person that in-camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.[68] During that review, the court must then determine to which documents specifically the second step applies.[69]

There is more than sufficient factual basis to form a reasonable belief that in-camera review of Big Sky's allegedly privileged documents may reveal evidence to establish that the crime-fraud

---

[65] *Seibel v. Eighth Judicial Dist. Court*, 138 Nev. 753, 756, 520 P.3d 350, 354 (Nev. 2022) (citing *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007), *abrogated on other grounds by Mowhawk Indus. v. Carpenter*, 558 U.S. 100).
[66] *Id.* (citation omitted).
[67] *Id.*
[68] *Id.* at 355.
[69] *Id.*

exception applies. Taken together, Big Sky's continued refusal to produce documents or any privilege log coupled with Lawler's recent testimony regarding the transfer of Big Sky's assets to ILS, Lawler, and Ingalls & Snyder and the motivation for filing for bankruptcy (to avoid the Arizona Court's required production and privilege log) support such an inference and at least warrant in-camera review.

**E. Big Sky cannot make breadth, burden, and relevance objections on Lawler's behalf and regardless, these objections ignore the broad scope of discovery under Rule 2004.**

Big Sky argues that the subpoenas are unduly burdensome and facially overbroad because they seek information that is not directly relevant to Big Sky's current assets.[70] Big Sky complains that the subpoenas "seek information from entities that are not parties to this litigation, including Big Sky Canada, Ingalls & Snyder Value Partners L.P., Mr. Lawler individually, ILS, and Vaninn Capital PCC."[71]

"It has long been clear that a party claiming that discovery imposes an undue burden must 'allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence.'"[72] "Conclusory or speculative statements of harm, inconvenience, or expense are plainly insufficient," as is "identifying the generalized burden of being deposed while holding a position as a corporate executive."[73]

Generally, a party has no standing to seek to quash a subpoena issued to a nonparty unless the party has some personal right or privilege in the documents being sought.[74] Only the party to which the subpoena is directed has standing to object on non-privilege grounds, i.e., "on the grounds that they are irrelevant, vague, overbroad, duplicative, unduly burdensome, etc."[75] Thus, Big Sky lacks standing to raise breadth and burden objections regarding the document and deposition subpoena to Lawler, so these arguments have been waived.

---

[70] ECF No. 32 at 22.
[71] *Id.* at 23.
[72] *Nationstar Mortgage, LLC v. Flamingo Trails No. 7 Landscape Maintenance Assoc.*, 316 F.R.D. 327, 334 (D. Nev. 2016) (quotation omitted).
[73] *Id.*
[74] *Xfinity Mobile Globalgurutech LLC*, 2023 WL 6795084, at *1 (D. Ariz. Oct. 13, 2023).
[75] *Experience Hendrix, LLC v. Pitsicalis*, 2023 WL 4247749, at *3 (C.D. Cal. Apr. 18, 2023).

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

Regardless, Big Sky's undeveloped breadth and burden arguments are based on an impermissibly narrow view of discovery under Rule 2004, which is simply wrong. Requiring Kazakhstan to accept Big Sky's conclusory and unsubstantiated assertions regarding its purported lack of assets based on its paltry productions would thwart the permissive, broad inquiry and put the fox in charge of the hen house, as further demonstrated by Big Sky's dilatory discovery tactics first in the ICSID Arbitration, next in the 2019 § 1782 Action, then in the Nevada and Arizona Actions, and finally in the instant Action.

The record of the ICSID Arbitration shows that there are complex contractual arrangements among Lawler, Big Sky Canada, Ingalls & Snyder Value Partners L.P., Vannin Capital PCC, and others that may assist in identifying assets that may have been fraudulently transferred to avoid payment of the Judgment and transferrable back to the bankruptcy estate. For example, Kazakhstan seeks to examine the following:

- Big Sky Canada is or was a wholly owned subsidiary of Big Sky and was the owner of the Kazakh limited liability partnership that formed the subject of the ICSID Arbitration.
- Vannin Capital PCC entered into an arbitration funding agreement with Big Sky and Big Sky Canada for the ICSID Arbitration. The heavily redacted arbitration funding agreement produced in the ICSID Arbitration showed that the arbitration was being managed by a British Virgin Island company, Agrima Limited, which appears to be controlled by an individual by the name of Daniel Israel.
- Ingalls & Snyder is a United States investment firm. In 2006, Big Sky issued a USD 15 million convertible note to Ingalls & Snyder.
- Lawler confirmed during the June 23, 2025, Meeting of Creditors that Big Sky Canada holds or held a $30M foreign arbitration award (i.e. the IUS Award as referred to in the Motion).

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

- During 2022, i.e. when Kazakhstan commenced the Enforcement Action, Big Sky Canada was actively seeking to enforce the IUS Award against an unrelated third party in Switzerland.
- Almost immediately after the Judgment was issued in the Enforcement Action, Big Sky disposed of its interest in Big Sky Canada (i.e. the potentially the only asset of any value against which the Judgment could be enforced).
- Lawler and Big Sky have repeatedly refused to disclose any documents at all to support the disposal of Big Sky Canada, which is now, at least in part, owned by Lawler and/or ILS. Moreover, Lawler has admitted that Big Sky filed for bankruptcy to avoid disclosing documents (apparently because the requested documents would reveal information about these transfers).

Because the requested documents bear on Big Sky's property, conduct, administration of its estate, and its right to a discharge, Big Sky's conclusory relevance-based breadth and burden objections must be denied. Allowing Big Sky to produce only what it deems to be relevant rather than fully responding to Kazakhstan's requests would only permit Big Sky to continue to conceal relevant information from Kazakhstan—a very real danger given Big Sky's (and Lawler's) discovery track records.

///

///

///

Snell & Wilmer L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

## IV. CONCLUSION

This Court should reject Big Sky's latest attempt to distract with a threatened "Forthcoming Arbitration," which has nothing to do with the validity of the instant subpoenas. Big Sky's repeated misrepresentations of the prior proceedings and dilatory discovery tactics should not be tolerated. After almost two years of delays, Big Sky and Lawler should be required to produce the requested documents and to testify under oath.

Dated: October 21, 2025. SNELL & WILMER L.L.P.

By: */s/ Bob L. Olson*

Bob L. Olson, Esq. (NV Bar No. 3783)
Erin M. Gettel (NV Bar No. 13877)
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
Email: bolson@swlaw.com
egettel@swlaw.com

*Attorneys for Republic of Kazakhstan*