**E-filed: January 13, 2026**

Bob L. Olson, Esq. (Nevada Bar No. 3783)
Erin M. Gettel, Esq. (Nevada Bar No. 13877)
SNELL & WILMER L.L.P.
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 784-5200
Facsimile: (702) 784-5252
Email: bolson@swlaw.com
egettel@swlaw.com

*Attorneys for Republic of Kazakhstan*

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>BIG SKY ENERGY CORPORATION,<br><br>Debtor. | Case No. 25-50445-hlb<br><br>Chapter 7<br><br>**REPUBLIC OF KAZAKHSTAN'S STATUS REPORT**<br><br>**Date of Hearing: December 19, 2025**<br>**Time of Hearing: 10:30 a.m.** |

Republic of Kazakhstan ("Kazakhstan" or "Creditor") by and through its attorneys, Snell & Wilmer L.L.P., hereby files this Status Report.

At the November 5, 2025, hearing before this Court,[1] the Court *sua sponte* recognized that Debtor's case may have been filed in bad faith and issued an *Order to Show Cause Why Bankruptcy Case Should not be Dismissed* [ECF No. 52] ("Order to Show Cause"). At the hearing held that day, the Court ordered the production of a privilege log and documents, continued the hearing on the Debtor's Motion to Quash to December 19, 2025, and set the hearing on the Order to Show Cause for December 19, 2025.

In *Republic of Kazakhstan's Response to Order to Show Cause Why Bankruptcy Case Should not be Dismissed* [ECF No. 57], Kazakhstan agreed with the Court's observation that the case was filed in bad faith – there is no doubt that Debtor's petition was filed to manipulate the

[1] Late the night before the November 5, 2005, hearing, Debtor produced approximately 32,000 pages of documents. In a nutshell, most of them were approximately 20 years old and were not responsive to the subpoenas. The results of the review of this production are summarized in the *Declaration of Bob L. Olson, Esq., in Support of Opposition to Objection to subpoenas and Motion to Quash or Modify Subpoenas and for Protective Order* [ECF No. 59].

courts for the sole purpose of staying compliance with the Production Order. Kazakhstan further argued that even though the case was filed in bad faith, dismissal was inappropriate under 11 U.S.C. § 707(a), *In re Padilla*, 222 F.3d 1184 (9th Cir. 2000), and *In re Sherman*, 491 F.3d 948 (9th Cir. 2007).

When responding to the Order to Show Cause, the Debtor alleged that the case was filed in good faith and should not be dismissed.

At the December 19, 2025, hearing, the Court declined to dismiss the case under 11 U.S.C. § 707(a), *Padilla* and *Sherman*. The Court also: (a) ordered the Debtor to produce responsive documents; (b) ordered the parties to meet and confer regarding the discovery in this case and set the examination of William Scott Lawler ("Lawler"); (c) ordered the parties to file a joint status report on or before December 13, 2025, and (d) appear at a continued hearing on January 15, 2026, at 10:30; and (d) advised Debtor of the risk of being sanctioned.

So far, all the Debtor's repeated efforts to thwart the Production Order before this Court have backfired. This Court ordered the production of a privilege log and documents. Debtor's privilege log described documents generated in 2006 to 2008. Debtor is desperately trying to avoid producing the required documents. Additionally, the Debtor has suffered a likely unanticipated and significant setback because the Trustee has waived all pre-petition privileges in this case, thereby eliminating the ability of the Debtor to hide behind the alleged attorney-client privilege.[2]

In yet another bad faith effort to game the courts to avoid complying with the Production Order and the verbal orders of this Court, Debtor filed the Motion to Dismiss on December 31, 2025. [ECF No. 60]. Debtor's fabricated basis for seeking dismissal is two-fold. First, it again wrongly alleges that Kazakhstan is abusing the bankruptcy system by seeking discovery from Debtor and Lawler for use in the Forthcoming Arbitration. Second, it wrongly argues that Kazakhstan will not be prejudiced by dismissal of the case. At the same time, the Motion totally ignores the nature of the information that Kazakhstan is seeking – evidence of avoidable transfers

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

[2] *See* ECF No. 62.

- and that Debtor is desperately trying to avoid producing that information. This status report focuses on the discovery being sought by Kazakhstan.

Kazakhstan is not using the Bankruptcy to obtain discovery for use in the Potential Arbitration. Instead, it has been unsuccessfully trying to obtain post-judgment discovery from Debtor and Lawler for almost two years. Over that time it has learned from the Shareholder Register of Big Sky Canada that Debtor, at Lawler's instruction, facilitated the April 15, 2022, transfer of Debtor's interest in Big Sky Canada to Ingalls & Snyder Value Partners, L.P. ("Ingalls"), and Ingalls subsequently transferred 15.77% of that stock to Lawler, Debtors sole officer, director, representative in these proceedings and an insider. In other words, almost immediately after Kazakhstan took steps to enforce the ICSID Award in Nevada, Big Sky disposed of its interest in Big Sky Canada—which appears to have been Debtor's primary asset and likely the only asset that the Trustee may be able to liquidate for the benefit of creditors.

As Debtor's counsel mentioned at the December 19, 2025, hearing, Kazakhstan's counsel sent him a November 19, 2025, correspondence regarding the documents that Kazakhstan was looking for. That correspondence is attached as **Exhibit A.** Kazakhstan did not receive a production in response to that correspondence.

In order to assist with preparing for the meet and confer, and to again identify the documents that Kazakhstan is most interested in reviewing, counsel for Kazakhstan sent Debtor's counsel another correspondence on December 23, 2025. That correspondence is attached as **Exhibit B**.

On December 31, 2025, the Trustee, Debtor's counsel, Mr. Wirthlin, and Kazakhstan's counsel attended a meet and confer. During that meeting, Mr. Wirthlin advised that he would be making a responsive document production of several hundred pages either that weekend or more likely early the following week. In order to follow up on the production and work on scheduling the examination of Mr. Lawler, the parties agreed to have another meet and confer on Friday January 9, 2026.

Debtor did not produce any documents before the scheduled January 9, 2026, meet and confer.

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

Late in the evening on January 8, 2026, Mr. Wirthlin asked to reschedule the meet and confer to January 12, 2026. The parties agreed and scheduled the meeting for 2:15 p.m. on January 12, 2025.

Debtor did not produce any documents before the January 12, 2026, meet and confer.

At the January 12, 2026, meet and confer, Debtor's counsel indicated that the document production would be made the evening of January 12, 2026.

At 8:35 a.m. on January 13, 2026, Debtor made a small document production consisting primarily of the following:

a. An executed copy and a draft of a June 30, 2008, Convertible Note Purchase Agreement between Debtor and Ingalls. Kazakhstan already has this document.

b. A June 29, 2006, opinion letter regarding the Convertible Note Purchase Agreement.

c. A 2007 correspondence regarding the outstanding shares and warrants of Debtor and a Shareholder Register.

d. Articles of Incorporation for Institute Counseling, Inc., dated December 30, 1992.

e. Miscellaneous emails from 2006 - 2007.

f. April 25, 2027, summary of the spouses of the former participants of Kozhan vs. BSEK & Kozhan.

g. Big Sky Energy Corporation's Directors' and Officers' Questionnaire related to the fiscal year ending December 31, 2007.

h. Miscellaneous corporate documents and memorandum regarding corporate procedures from between 2000 and 2007.

The January 13, 2026, document production from Debtor is again irrelevant to Kazakhstan's investigation. A responsive document production is required in order for Kazakhstan to prepare for and conduct a meaningful examination of Lawler.

///

///

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

Given the differing views of this matter between Kazakhstan and Debtor, Kazakhstan believes that it would not have been possible to negotiate and file a timely joint status report with the Court.

Dated: January 13, 2026.

SNELL & WILMER L.L.P.

*/s/ Bob L. Olson*

Bob L. Olson, Esq. (NV Bar No. 3783)
Erin M. Gettel (NV Bar No. 13877)
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135

*Attorneys for Republic of Kazakhstan*

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

# EXHIBIT A

EXHIBIT A

SNELL
& WILMER

**Bob L. Olson, Esq.**
O 702.784.5295 | F 702.784.5252
bolson@swlaw.com

November 19, 2025

***VIA EMAIL***

Brenoch Wirthlin, Esq.
Wirthlin & Verlaine
400 S. 4th Street, Suite 300
Las Vegas, NV 89101
Email: bwirthlin@wirthlinlawfirm.com

Re: In re Big Sky Energy Corporation / Case No. 25-50445-hlb
***Subpoena Responses***

Dear Brenoch,

We are working our way through Big Sky Energy's ("Debtor") November 4, 2025, document production. As expected, so far nothing produced appears to be helpful or related to the transfers of the stock in Big Sky Energy Kazakhstan, an Alberta corporation ("Big Sky Canada"), to Mr. Lawler and/or International Legal Services, a Belize corporation ("ILS") and Ingalls & Snyder. Similarly, it appears that nothing has been produced relating to the settlement of Big Sky Energy Canada's claims against Kozhan and its successors including Geo-Jade.

By this correspondence, the Republic of Kazakhstan ("ROK") is requesting Mr. Lawler and Debtor to prioritize production of all subpoenaed documents regarding these transactions and the ILS Note. These documents are specifically requested as requests nos. 1, 4, 14 – 22, 41 - 42, 46 – 52, 55-57 in the Specific Document Requests list attached to the Subpoenas served on Debtor and Mr. Lawler. Since the transactions described herein appear to have started in 2021 or 2022, it should be easy for Debtor and Mr. Lawler to identify and produce the responsive documents.

Please note that this correspondence is not a waiver by ROK of any rights it has or may have in connection with the subpoenas. Instead, it is intended to secure an expedited production of the categories of documents described in this correspondence.

Yours truly,

SNELL & WILMER

Bob L. Olson

BLO:mf
cc: Lucy Winnington-Ingram – via email: lwinnington-ingram@reedsmith.com
W. Donald Gieseke – via email: wdg@renotrustee.com

# EXHIBIT B

EXHIBIT B

SNELL
& WILMER

**Bob L. Olson, Esq.**
O 702.784.5295 | F 702.784.5252
bolson@swlaw.com

December 23, 2025

***VIA EMAIL***

Brenoch Wirthlin, Esq.
Wirthlin & Verlaine
400 S. 4th Street, Suite 300
Las Vegas, NV 89101
Email: bwirthlin@wirthlinlawfirm.com

Re: In re Big Sky Energy Corporation / Case No. 25-50445-hlb
***Court Mandated Meet and Confer***

Dear Brenoch,

I am writing you pursuant to the Court's order that the parties meet and confer and file a Joint Status Report by no later than January 13, 2026. As I advised you in my letter of November 19, 2025, a copy of which is enclosed, and the Court at the December 19, 2019, hearing, the Republic of Kazakhstan ("ROK") believes that the Debtor's November 4, 2025, document production was not responsive. Indeed, I would go so far as to say that the Debtor appears to have intentionally produced ancient documents that have nothing to do with the ROK's investigation into its financial affairs.

It is not my intent by writing this correspondence to waive ROK's right to require production of relevant documents by the Debtor. Similarly, it is not my intent to reduce the scope of documents to be produced that I describe in my letter to you of November 19, 2025. Rather, it is my intent to identify the documents that the Debtor should prioritize producing.

As I have stated in several prior meet and confers and advised the Court at two different hearings, the primary focus of ROK's investigation is Ingalls & Snyder Value Partners, L.P.'s ("Ingalls") foreclosure of the Debtor's interest in the stock to Big Sky Energy Kazakhstan, an Alberta corporation ("Big Sky Canada") and events occurring after that foreclosure. This investigation includes but is not limited to:

- All documents and facts regarding the creation, attachment, and perfection of any security interest of Ingalls in the Big Sky Canada stock.
- All documents and facts giving Ingalls the right to foreclose on the Big Sky Canada stock.
- All documents and facts regarding the foreclosure notices, notices of UCC sales, etc., that relate to the transfer of the Big Sky Energy stock to Ingalls.
- All documents and facts indicating how much Ingalls was owed when it obtained title to the Big Sky Canada stock.
- All documents regarding the assets and liabilities of Big Sky Canada on the date Ingalls obtained title to the Big Sky Canada stock.

- All communications between any representative of Debtor (including William Scott Lawler ("Lawler")) and Ingalls regarding the foreclosure of the Big Sky Canada stock and the events occurring after the foreclosure.

- All documents and facts regarding the creation, attachment, and perfection of any security interest of Lawler and/or International Legal Services ("ILS").

- All documents and facts giving Lawler and/or Ingalls the right to take ownership in the stock of Big Sky Canada.

- All documents and facts regarding the foreclosure notices, notices of UCC sales, etc., that relate to the transfer of any of the stock in Big Sky Energy Stock to Lawler and/or ILS.

- All documents and facts indicating how much Lawler and/or ILS was owed on the date when Ingalls foreclosed on the Big Sky Canada stock and on the date when approximately 15% of the stock to Big Sky Canada was conveyed to Lawler and/or ILS.

- All documents and facts regarding the foreclosure notices, notices of UCC sales, etc., that relate to the transfer of any of the Big Sky Energy Stock to Lawler and/or ILS.

- All documents and facts, including agreements among Ingalls, ILS and Lawler, related to Big Sky Canada. Such documents may include such things as intercreditor agreements, subordination agreements, joint representation agreements, etc.

- All documents and facts, including agreements among Ingalls, ILS and Lawler, related to Ingall's transfer of approximately 15% of Big Sky Canada to Lawler and/or ILS.

- All documents and facts regarding any and all judgments, arbitration awards and similar awards held by Big Sky Kazakhstan against any third parties, including the so-called "IUS Award" (collectively the "Awards"), regardless of when the Awards were obtained.

- All documents and facts related to compromise, adjustment, or settlement of any Awards. ROK understands that prior to the transfer of the stock in Big Sky Canada to Ingalls there were ongoing enforcement proceedings and attachments in Switzerland in connection with the IUS Award and those proceedings were subsequently settled resulting in a payment form the award debtor.

- All communications regarding any Award among Big Sky Canada, Daniel Israel ("Israel"), Lawler, Ingalls, ILS, and any representative of the party owing part or all of any Award to Big Sky Canada.

- The disposition of all funds received by Big Sky Canada in connection with the compromise, adjustment or settlement of any Award held by Big Sky Canada against any

third party. This includes all initial and subsequent payments made to Big Sky Canada and any nominee of Big Sky Canada. This also includes all initial and subsequent payments made by Big Sky Canada to Ingalls, Lawler, ILS, Israel and any other third party.

This is not the universe of discovery being sought by ROK. I want to emphasize that it is important for Debtor and Lawler to make a meaningful production. I will comment to the Court if the next production of documents is yet another bulk production of irrelevant documents.

The Court also ordered us to report on the status of the oral examination of Lawler in the Joint Status Report. There are a few points regarding the oral examination that I wish to raise for consideration. First is the format of the examination. Given my observations of Lawler's demeanor at the meeting of creditors, I believe it needs to be in person. Since the case was filed in Reno and the trustee resides there, I think Reno would be an appropriate location for the examination.

Second, Lawler was incredibly evasive and nonresponsive to my questioning. Should this occur at his oral examination, I will request that the Court allow ROK to continue the examination from time-to-time to allow a complete examination of Lawler.

Third, if the examination occurs before Lawler and Debtor produce all required documents, there must be an agreement that the examination can be resumed after the remaining documents have been produced.

I am not the Trustee's counsel. The Trustee may have additional thoughts on this matter that I have not considered.

Following your receipt of this letter, I suggest that you confer with Mr. Lawler regarding the timing and extent of the next document production. After you have done so, we should plan to schedule the Court mandated meet and confer.

Yours truly,

SNELL & WILMER

Bob L. Olson

BLO:mf

cc: Lucy Winnington-Ingram – via email: lwinnington-ingram@reedsmith.com
W. Donald Gieseke – via email: wdg@renotrustee.com