Honorable Hilary L. Barnes
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>BIG SKY ENERGY CORPORATION,<br><br>Debtor. | Case No. 25-50445-hlb<br><br>Chapter 7<br><br>**MEMORANDUM DECISION**<br><br>Related ECF No. 32 |

This matter came before the Court pursuant to the *Motion to Quash or Modify Subpoenas and Objection to Subpoenas* ("Motion") filed by Big Sky Energy Corporation ("Debtor").[1] After giving the parties multiple opportunities to resolve their discovery disputes, on January 15, 2026, the Court held the final continued hearing on the Motion, at which appearances were noted for the record. After oral argument concluded, the Court took the matter under advisement. The Court reviewed and considered the record, the documents and written testimony offered by the parties, and the oral arguments presented. For the following reasons, the Court will deny the Motion and direct Debtor and William Lawler to respond to the Subpoenas[2] and turn over all responsive documents in its possession, custody, and control to the Republic of Kazakhstan ("ROK"), care of its attorneys, within 30 days.

[1] ECF Nos. 32 and 33. In this decision, all references to "ECF No." are to the numbers assigned to the documents filed in this bankruptcy proceeding as they appear on the docket maintained by the clerk of the court. "Section" refers to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" refers to the Federal Rules of Bankruptcy Procedure. "Civil Rule" refers to the Federal Rules of Civil Procedure.

[2] Defined below.

**Jurisdiction**

The Court exercises jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the Motion presents a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O) and 157(b)(3).

**Background**

In March 2022, plaintiff ROK sued Debtor ("Enforcement Action") in the U.S. District Court for the District of Nevada ("Nevada District Court") to recognize and enforce ROK's arbitration award against Debtor from the International Centre for Settlement of Investment Disputes (ICSID).[3]

In July 2022, the Nevada District Court entered a default judgment in ROK's favor against Debtor in the then-total amount of $587,030.43, plus applicable interest ("Judgment").[4]

After Debtor did not pay the Judgment, on January 3, 2024, ROK served two subpoenas, one on Debtor and the other on Lawler, the sole officer and attorney for Debtor, to testify at a deposition in Phoenix, Arizona and to produce documents.[5]

On July 8, 2024, after significant back-and-forth between the parties regarding the requested discovery, Debtor moved to quash the subpoenas in the Nevada District Court ("Original MTQ").[6] The Nevada District Court denied the Original MTQ without prejudice to enable Debtor to seek relief in the district where compliance was required, the U.S. District Court for Arizona ("Arizona District Court").[7]

On September 6, 2024, Debtor filed its objection to subpoenas and motion to quash or modify subpoenas ("Refiled MTQ") in the Arizona District Court.[8] On January 24, 2025, the Arizona District Court denied the Refiled MTQ and required Debtor to provide a privilege log

[3] ECF No. 45-2 at 2:24-3:1.
[4] ECF No. 45-2 at 2:20-24.
[5] ECF No. 45-2 at 3:1-4.
[6] ECF No. 45-2 at 2:20-24.
[7] ECF No. 45-2 at 3:9-15.
[8] ECF No. 45-2 at 3:16-19.

to ROK by February 24, 2025.[9]

On May 15, 2025, after numerous accommodations and extensions of the deadline to provide the privilege log, Debtor filed a voluntary petition for bankruptcy relief under Chapter 7,[10] without ever producing the privilege log.

W. Donald Gieseke is the Chapter 7 Trustee of Debtor's estate.[11]

On June 30, 2025, ROK filed a proof of claim in the amount of $674,646.49 arising from the unpaid Judgment.[12]

On August 21, 2025, ROK filed two Ex Parte Motions for 2004 Examinations of the 30(b)(6) Witness of Debtor and Mr. Lawler ("2004 Requests").[13] On August 29, 2025, the court entered two orders granting the 2004 Requests.[14]

On September 15 and 16, 2025, ROK filed Notices of Rule 2004 Examinations and Notices of Issuance of Subpoenas on Lawler and the Debtor's Civil Rule 30(b)(6) witness.[15] Given that Mr. Lawler is the Debtor's only officer, he is the Debtor's Civil Rule 30(b)(6) witness.

In the Civil Rule 306(b)(6) subpoena and Lawler subpoena (collectively, the "Subpoenas"), the Definitions section of "Exhibit A: Items to be Produced" identifies certain non-debtor parties:

Big Sky Energy Kazakhstan Ltd. ("Big Sky Canada")[16];

Thomas M. Boucher;

Jacqueline R. Danforth;

---

[9] ECF No. 45-2 at 8:3-8.
[10] ECF No. 1.
[11] ECF No. 2.
[12] Claim 1-1.
[13] ECF Nos. 15 and 16.
[14] ECF Nos. 17 and 18.
[15] ECF Nos. 23-26.
[16] Until April 2022, Big Sky Canada was Debtor's subsidiary. ECF No. 32.

Geo-Jade Petroleum[17];

Matthew Heysel[18];

Ingalls & Snyder Value Partners L.P.;

International Legal Services, Inc. ("ILS");

Daniel Israel[19];

KoZhan LLP[20]; and

Vannin Capital PCC, and any of its subsidiaries and affiliates.[21]

On October 2, 2025, Debtor filed the Motion.[22] Debtor's counsel certified that before filing the Motion he met and conferred with ROK's counsel to try to resolve or narrow the scope of the requested documents. Debtor argues among other things that the Court should quash or modify the Subpoenas because they are overbroad, unduly burdensome, harassing, and constitute an abuse of process. Debtor accuses ROK of using the bankruptcy to improperly seek discovery against Big Sky Canada to assist it in a "forthcoming arbitration" that Big Sky Canada purportedly intends to submit to international arbitration under an agreement referred to as Canada-USSR BIT.[23]

Mr. Lawler offered a declaration stating that the Debtor has not been operating since 2015, he is its only employee, its only officer, and its attorney, and it has no assets of any kind to satisfy the Judgment.[24] Debtor posits that the only relevant documents that it should be compelled to produce should be documents related to its assets or lack thereof. Without waiving its objections as set forth in its Motion, the Debtor promised that a rolling production of what it

---

[17] ROK did not include Geo-Jade Petroleum in Mr. Lawler's subpoena's definitions.

[18] ROK did not include Matthew Heysel in Mr. Lawler's subpoena's definitions.

[19] ROK did not include Daniel Israel in Mr. Lawler's subpoena's definitions.

[20] ROK did not include KoZhan LLP in Mr. Lawler's subpoena's definitions.

[21] ECF Nos. 24 and 25. As discussed below ROK asserts that these parties were involved in the Transfers.

[22] ECF No. 32. On October 3, 2025, Debtor filed an errata to the Motion (ECF No. 33) to add an inadvertently excluded exhibit.

[23] ECF 32.

[24] ECF 32, Exhibit 3; the assertions regarding the Debtor's assets (or lack of assets) address numerous requests for production.

considered to be relevant documents would begin by the production deadline of October 3, 2025.[25]

On October 21, 2025, ROK filed an Opposition to the Motion ("Opposition") with a supporting declaration.[26] ROK explained that it is attempting to obtain information regarding, among other things, (i) Debtor's April 2022 transfer of all of outstanding shares (10,000,000) in Big Sky Canada to Ingalls & Snyder via "friendly foreclosure"[27] less than a month after ROK began enforcing its Judgment ("Ingalls Transfer"), (ii) Ingall's transfer of 15.77% shares to Mr. Lawler and/or ILS, Mr. Lawler's company, in July 2023 ("Lawler Transfer," and with the Ingalls Transfer, the "Transfers"), and (iii) Big Sky Canada's settlement of a $30 million award held by Big Sky Canada against KoZhan (and/or its successors) which took place after the Transfers occurred ("Settlement"). ROK's position is that the Transfers enabled Debtor to dispose of Big Sky Canada, Debtor's primary asset (which held the $30 million award), and the Chapter 7 Trustee may avoid the Transfers and liquidate that primary asset for the benefit of creditors.[28] The third parties listed in the Subpoenas were involved in the Transfers.

On October 31, 2025, Debtor filed a Reply in Support of the Motion reiterating its positions.[29]

On November 5, 2025, the Court held the first hearing on the Motion.[30] Late the night before, Debtor produced documents to ROK and the Trustee ("Nov. 4 Production") and at the hearing suggested that a continuance would be appropriate to enable ROK and the Trustee to review the production.

On November 13, 2025, the court entered an Interim Order on the Motion (i) directing the Debtor to prepare and serve a privilege log on ROK by December 5, 2025, and (ii)

---

[25] ECF No. 32.
[26] ECF Nos. 45 and 46.
[27] Mr. Lawler filed a UCC on Ingalls' behalf. ECF No. 51, Exh. 1, pp. 24-25.
[28] ECF No. 45.
[29] ECF No. 51.
[30] ECF No. 63.

continuing the hearing until December 19, 2025.[31]

The Nov. 4 Production did not provide any information regarding the Transfers.[32] Consequently, ROK requested Debtor and Mr. Lawler to prioritize certain enumerated requests for production without waiving ROK's rights in connection with the Subpoenas.[33]

On December 8, 2025, the Chapter 7 Trustee filed a Waiver of Pre-Petition Privileges ("Privilege Waiver").[34] The Privilege Waiver included all privileged and non-privileged communications between Debtor and Lawler and expressly waived all pre-bankruptcy privileges including the attorney-client privilege, the accountant-client privilege, and the work-product doctrine with respect to ROK.[35] As a result, Debtor's preparation and service of a privilege log was unnecessary.

On December 19, 2025, the Court held a continued hearing on the Motion, at which Debtor reported that it was continuing to search for and produce documents regarding the Ingalls Transfer (e.g., documents giving Ingalls a security interest in the Debtor's shares in Big Sky Canada, documents empowering Ingalls to take possession of the shares, the UCC financing statement showing perfection of the interest, documents establishing what Ingalls was owed when it obtained the Big Sky Canada stock, among other documents).[36] Debtor stated that it did not believe the Ingalls Transfer is fraudulent, and whatever happened after the Ingalls Transfer is irrelevant.[37]

ROK reiterated that Debtor ignored its requests for documents, and given that privilege was no longer an issue, all documents should be produced immediately. Debtor requested that its counsel and ROK's counsel be given an opportunity to have a "focused discussion," but in

---

[31] ECF No. 54.

[32] ECF No. 59.

[33] ECF No. 59, and ECF No. 80, Exhibit A.

[34] ECF No. 62.

[35] *Id.*

[36] ECF No. 65, 6, and ECF 84, at 9:3-16.

[37] ECF No. 84, 8:2-16

the meantime, Debtor was working on its production. The Court ordered the parties to meet and confer before the end of 2025, set a continued hearing for January 15, 2026, and directed the parties to provide a joint status report regarding the production before the January hearing and keep the Chapter 7 Trustee apprised.[38]

On December 23, 2025, ROK sent Debtor another letter, like the November 17, 2025 letter, outlining ROK's primary focus of its investigation and requesting that the Debtor prioritize its production, providing bullet points regarding documents at issue, but again without waiving any of its rights.

Before the January 15, 2026 hearing, the parties filed three discrete status reports rather than a joint status report.[39] Debtor reported it had provided more pages of documents, ROK reported that none of the produced documents were responsive to the Subpoenas, and the Chapter 7 Trustee reported that he was reviewing the documents Debtor produced.[40]

On January 15, 2026, the court held a continued hearing on the Motion, at which the parties reiterated their opposing positions, detailed what had and had not been produced, and argued regarding what Debtor or Mr. Lawler purportedly could and could not produce.[41] The Court then took the matter under submission.

## Legal Standards

Under Bankruptcy Rule 2004(a), "any party in interest" may seek an order from the bankruptcy court allowing ". . . the examination of any entity." The purpose of Rule 2004 is "to discover the existence and location of assets of the estate."[42] Rule 2004 permits an unfettered and broad examination into the debtor's acts, conduct, property, liabilities, financial condition, or right to a discharge or any matter that may affect the administration of the debtor's estate.[43]

---

[38] ECF No. 84, 17:3-24.
[39] ECF No. 76, 80, and 81.
[40] *Id.*
[41] ECF No. 85.
[42] *In re Dinubilo*, 177 B.R. 932, 940 (E.D. Cal. 1993) (citing 2 COLLIER ON BANKRUPTCY ¶ 343.04).
[43] FED. R. BANKR. P. 2004(b); *Rigby v. Mastro (In re Mastro)*, 585 B.R. 587, 596-97 (B.A.P. 9th Cir. 2018).

Rule 2004 "essentially permits a fishing expedition."[44] Discovery rules under the Civil Rules are far more restrictive. Parties can use Rule 2004 to unearth fraud.[45] A debtor's attorneys may be subject to a Rule 2004 examination if they have personal knowledge of the debtor's financial affairs, are transferees and transferors of assets, and act beyond any role as counsel. *In re Buick*, 174 B.R. 299 (Bankr. D. Colo 1994).

Although the scope of Rule 2004 is expansive, it should not be an instrument of abuse or harassment.[46] Once the targeted party objects, the party seeking to take the 2004 examination must demonstrate good cause for the examination.[47] The Court considers the totality of the circumstances to determine whether good cause exists.[48]

An attorney may issue a subpoena under Rule 2004.[49] On timely motion, the court must quash or modify a subpoena that requires disclosure of privileged or other protected matter or subjects a person to undue burden.[50] "The moving party bears the burden of persuasion on a motion to quash, but the party issuing the subpoena must demonstrate that the discovery is relevant."[51]

**Discussion**

The Court finds and concludes that Debtor failed to carry its burden of persuasion. The information subpoenaed from Debtor is not privileged or overbroad, Debtor has not established that providing ROK with the requested information constitutes an undue burden, and finally, the information sought is relevant to identifying potential assets for distribution to creditors.

First, on behalf of Debtor, the Chapter 7 Trustee, who controls Debtor's bankruptcy

---

[44] *Mastro*, 585 B.R. at 597 (citation and internal quotation marks omitted).

[45] *In re Art & Architecture Books of 21st Century*, No. 2:13-bk-14135-RK, 2019 WL 9243053, at *6 (Bankr. C.D. Cal. Dec. 6, 2019).

[46] *Mastro*, 585 B.R. at 597 (citations omitted) (cleaned up).

[47] *See In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985).

[48] *See Bank of Am., N.A. v. Landis*, 2011 WL 6104495, at *6 (D. Nev. Dec. 7, 2011).

[49] FED. R. BANKR. P. 2004(c); FED. R. BANKR. P. 9016.

[50] FED. R. CIV. P. 45(3)(A)(iii) and (iv); FED. R. BANKR. P. 9016.

[51] *In re Rule 45 Subpoenas Issued to Google LLC & LinkedIn Corp.*, 337 F.R.D. 639, 645 (N.D. Cal. 2020).

estate and stepped into the shoes of Debtor's management, waived all privileges with the Privilege Waiver. Accordingly, Debtor cannot claim that any of its communications and documents, whether shared with/by Mr. Lawler or others, is privileged; therefore, a privilege review is unnecessary.[52]

Second, Debtor provided no evidence that ROK's requested information would unduly burden Debtor. "[A] party claiming that discovery imposes an undue burden must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence."[53] "Conclusory or speculative statements of harm, inconvenience, or expense are plainly insufficient."[54]

Here, Debtor offers conclusory statements such as the "[s]ubpoenas should be quashed due to the fact that they are facially overbroad and unduly burdensome" and that "[c]ompliance would require extensive document collection, privilege review, and production far out of proportion to the limited issues in this bankruptcy matter."[55] Such statements are not specific facts conveying the nature and extent of the burden. As noted previously, a privilege review is unnecessary. Debtor argues that ROK is attempting to improperly gather information to support its position in a "forthcoming arbitration."[56] However, the possibility that there may be a legal action commenced by Big Sky Canada against ROK in the unspecified future does not tip the scales in favor of quashing the Subpoenas. The record does not reflect that any such collateral litigation exists.

Third, Debtor further argues that the Subpoenas are irrelevant because they request information beyond whether Debtor can pay a judgment and involve information related to the

---

[52] Debtor lacks standing to raise these breadth and burden objections on Mr. Lawler's behalf. *See, e.g.*, *In re Rhodes Companies, LLC*, 475 .R. 733 (2012) ("The Court concludes that only the party subject to the subpoena may bring a motion to quash under Rule 45(c)(3)(A).")

[53] *Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*, 316 F.R.D. 327, 334 (D. Nev. 2016) (citation and internal quotation marks omitted).

[54] *Id.* (citation omitted).

[55] ECF Nos. 32 at 28:18-19; 51 at 12:22-24.

[56] ECF No. 51 at 9:1-12:12.

third parties.[57] The Debtor cannot restrict the discovery to what it thinks is germane to the Chapter 7 Trustee or ROK. Rule 2004 permits parties to obtain information about the debtor's financial affairs, which includes potential Chapter 5 causes of action. For instance, if Mr. Lawler orchestrated the Ingalls Transfer on the Debtor's behalf, his communications with Big Sky Canada and Ingalls (and/or any of its representatives) are relevant and squarely within the scope of Rule 2004. The requested production may (or may not) reveal that the Transfers are subject to avoidance and provide information regarding the Debtor's property, conduct, and the administration of the estate.[58] The discovery of that information falls within the purview of Rule 2004. ROK therefore demonstrated that the information is relevant.

Finally, if Debtor and Mr. Lawler do not have custody, possession, or control of the requested documents, they can say so.

The Court notes that the Debtor refused and failed to fully comply with discovery orders in the Arizona District Court before bringing its case to this Court. ROK has been seeking post-Judgment discovery for almost three years, which Debtor by its conduct has frustrated. ROK and the Chapter 7 Trustee are gathering information on Debtor's financial affairs as contemplated by Rule 2004. These are valid inquiries that Debtor fails to acknowledge.

For these reasons, the Court will enter an order concurrently with this memorandum decision denying the Motion and directing Debtor and Mr. Lawler to fully respond to the Subpoenas in an organized manner within 30 days of entry of the order.

**SIGNED AND DATED ABOVE.**

Copies sent via CM/ECF electronic filing

Copies sent via BNC to:

William Scott Lawler
3954 E. Weston Lane
San Tan Valley, AZ 85140

---

[57] ECF No. 32 at 24:4-27:9.

[58] ECF No. 45 at 15:8-16:17.