**E-filed: November 6, 2026**

Bob L. Olson, Esq. (Nevada Bar No. 3783)
Erin M. Gettel, Esq. (Nevada Bar No. 13877)
SNELL & WILMER L.L.P.
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 784-5200
Facsimile: (702) 784-5252
Email: bolson@swlaw.com
egettel@swlaw.com

*Attorneys for Republic of Kazakhstan*

SNELL & WILMER

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>BIG SKY ENERGY CORPORATION,<br><br>Debtor. | Case No. 25-50445-hlb<br><br>Chapter 7<br><br>**REPUBLIC OF KAZAKHSTAN'S OPPOSITION TO DEBTOR'S MOTION UNDER RULE 8007 FOR LIMITED STAY PENDING APPEAL OF ORDER DENYING MOTION TO QUASH [ECF NO. 105]**<br><br>ECF No. 113<br><br>**Hearing Date: November 13, 2026**<br>**Hearing Time: 10:00 a.m.** |

Creditor Republic of Kazakhstan ("Kazakhstan" or "ROK") by and through its attorneys, Snell & Wilmer L.L.P., hereby responds to *Debtor's Motion Under Rule 8007 for Limited Stay Pending Appeal of Order Denying Motion to Quash [ECF No. 105]* (the "Stay Motion") [ECF No. 113], filed on October 26, 2026, purportedly by Big Sky Energy Corporation ("Debtor") and joined [ECF No. 130] by William Lawler ("Lawler" and together with Debtor, "Former Management"). This Opposition is supported by the following Memorandum of Points and Authorities, the pleadings, and papers on file herein and any oral argument the Court may entertain.

SNELL & WILMER

## MEMORANDUM OF POINTS AND AUTHORITIES

This is yet another effort by Former Management to evade producing documents in response to subpoenas served on Lawler and Debtor that were intended to identify assets that may be liquidated and the proceeds distributed to creditors. It is undisputed that:

- Former Managements' efforts to quash Kazakhstan's post-judgment subpoena before the United States District Court for the District of Nevada ("Nevada District Court") was denied on August 23, 2024, over two years ago, on procedural grounds. *See* **Exhibit A (Nevada District Court Order)**; [1]
- Former Managements' efforts to quash Kazakhstan's post-judgment subpoena before the United States District Court for the District of Arizona ("Arizona District Court") was denied on the merits on January 24, 2025—almost two years ago. *See* **Exhibit B (Arizona District Court Order)**[2] Debtor's extended deadline to comply with the subpoena was May 16, 2025;
- On May 15, 2025—one day before Debtor's extended deadline to comply with the Arizona District Court Order—Former Management filed the petition in this case in an obvious attempt to avoid complying with the order. *See* ECF No. 1-1;
- After it filed the Motion to Quash, but before the Court entered the Interlocutory Order, Debtor sought dismissal of the case it filed in a bad-faith attempt to strip this Court of jurisdiction over the matter *after filing this action to strip the Arizona District Court of jurisdiction*. *See* ECF Nos. 70, 90;
- On October 9, 2026, this Court entered its *Memorandum Decision* [ECF No. 104] and a related Order Denying Motion to Quash [ECF No. 105] (collectively "Interlocutory Order") denying Debtor's Motion to Quash; and
- Now, Former Management seek their sixth, seventh, eighth and ninth bites of the apple by filing the Notice of Appeal, the Motion for Leave, the Motion to Stay, the

---

[1] Exhibit A was presented and authenticated in Kazakhstan's *Opposition to Objection to Subpoenas and Motion to Quash or Modify Subpoenas and for Protective Order (ECF No. 32)* [ECF No. 45] (the "Opposition to Motion to Quash").

[2] Exhibit B was presented and authenticated as Exhibit B in the Opposition to Motion to Quash.

Motion for Protective Order, and the 9006 Motion. ECF Nos. 111, 113, 114, and 115.

Kazakhstan requests that the Court recognize Former Managements' efforts for what they truly are: another ruse to avoid complying with the subpoenas and at least two court orders and the latest in a long line of abusive litigation tactics.

## I. INTRODUCTION AND FACTUAL BACKGROUND

The Court should deny Former Managements' latest attempt to further delay the production of documents. As detailed extensively in this proceeding, Former Management resisted the turnover of documents for nearly three years. *See, e.g., Opposition to Ex Parte Motion for Order Shortening Time to Hear (1) Debtor's Motion for Protective Order; (2) Debtor's Motion for Limited Stay Pending Appeal; and (3) Debtor's Motion Under Rule 9006(b)(1) to Set Production Schedule* (the "OST Opposition") [ECF No. 118] (detailing the extensive history of this discovery dispute). On October 9, 2026, this Court issued its *Memorandum Decision* [ECF No. 104] which stated:

> The Court notes that the Debtor refused and failed to fully comply with discovery orders in the Arizona District Court before bringing its case to this Court. ROK has been seeking post-Judgment discovery for almost three years, which Debtor by its conduct has frustrated. ROK and the Chapter 7 Trustee are gathering information on Debtor's Financial affairs as contemplated by Rule 20004. These are valid inquiries that Debtor fails to acknowledge.

*Id.* at 10.

On October 9, 2026, the Court entered a related *Order Denying Motion to Quash* [ECF. No. 105] (the "Interlocutory Order"). The Interlocutory Order fully and finally denied the *Debtor's Motion to Quash or Modify Subpoenas and Objection to Subpoenas* [ECF No. 32] and directed the Debtor and William Lawler ("Lawler") "to respond to the Subpoenas and produce all responsive documents in their possession, custody, and control to Republic of Kazakhstan, care of its attorneys at Snell & Wilmer, LLC, within 30 days after entry of this order." ECF No. 104 at 10. This Court should reject Former Managements' attempt to further delay production.





SNELL & WILMER

SNELL & WILMER

## II. LEGAL ARGUMENT

A stay pending appeal "is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (citation omitted). Rather, a stay pending an appeal is "an intrusion into the ordinary processes or administration and judicial review," *id*. at 427, and an "extraordinary remedy," *United States v. Mitchell*, 971 F.3d 993, 999 (9th Cir. 2020). Former Management fall well short of establishing their entitlement to this extraordinary remedy, including because: (A) Former Management lack authority to appeal on behalf of Debtor, and (B) the Stay Motion fails to satisfy the grounds for a stay pending appeal anyway.

### A. Former Management Lack Standing to Appeal

Because Debtor filed a voluntary petition for chapter 7 bankruptcy, the trustee and only the trustee can exercise corporate authority over Debtor. *See, e.g.,* 11 U.S.C. § 330(a) ("The trustee in a case under this title is the representative of the estate."); *In re Dep't 13, Inc.*, No. 23-10691, 2024 WL 958080, at *1 (Bankr. D. Del. Mar. 5, 2024) ("[T]he filing of a chapter 7 case by a corporate entity effectively replaces the debtor's board of directors with the chapter 7 trustee [such that the company's] assets (including any causes of action it might have held [including appeals] become part of the bankruptcy estate and are managed by the trustee.")). It follows that only the trustee may authorize Debtor to file an appeal. Since the trustee is not prosecuting any such appeal, Former Managements' attempt to usurp the trustee's authority and manufacture an unauthorized appeal—purportedly on Debtor's behalf—must fail in the first instance.

The inability of former management to appeal on a debtor's behalf is well-recognized. For example, in *South Edge LLC v. JPMorgan Chase Bank, N.A.*, a District of Nevada judge dismissed appeals filed by the debtor's former management in light of the appointment of a trustee. No. 2:11-CV-00240-PMPP, 2011 WL 1626567, at *4 (D. Nev. Apr. 28, 2011). Relying on the black-letter rule that a trustee in bankruptcy "assumes control of the business, and the debtor's directors are 'completely ousted,'" it dismissed appeals filed by the debtor's former managers. *Id.* at *7 (quoting *In re C.W. Mining Co.*, 636 F.3d 1257, 1263 (10th Cir. 2011) (quoting *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 353 (1985))). Indeed, as the Tenth Circuit held in *C.W.*

*Mining*, "individuals may not usurp the *corporation's* right to appeal, which may be exercised by the trustee alone." *C.W. Mining*, 636 F.3d at 1263; *see also In re Bear Creek Trail, LLC*, 35 F.4th 1277, 1281 (10th Cir. 2022) (same); *Piecemakers v. McKinney,* No. 8:25-CV-00224-SPG, 2025 WL 2995019, at *4 (C.D. Cal. May 23, 2025) (same).

Since Former Management lack the authority to appeal, the Court need not even reach the question of whether to grant a stay pending appeal. Nevertheless, to the extent the Court considers that portion of the Stay Motion, Former Managements' request still fails.

**B. Former Management Does Not Satisfy the Requirements for a Stay**

Although the issuance of a stay pending appeal "is left to the court's discretion," the Court should consider four factors in its analysis:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;

(2) whether the applicant will be irreparably injured absent a stay;

(3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and

(4) where the public interest lies.

*Nken*, 556 U.S. at 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The first two factors are most critical. *Id.* Indeed, if a movant fails to make a threshold showing of harm, "a stay may not issue, regardless of the petitioner's proof regarding the other stay factors." *Am. Fed'n of Gov't Emps. v. Trump*, 139 F.4th 1020, 1029 (9th Cir. 2025) (quotation omitted).

**1. The Purported Appeal Will Fail on the Merits**

Former Management contend, incorrectly, that their appeal raises serious questions about the scope of the trustee's waiver of Debtor's attorney-client privilege. It does not. As the Supreme Court recognizes, orders requiring the production of privileged communications most often "involve the routine application of settled legal principals [that are] unlikely to be reversed on appeal[.]" *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 110 (2009). Thus, Former





SNELL & WILMER

Management face an uphill battle out of the gates. Regardless, the arguments raised in the Stay Motion otherwise fail for several reasons.

First, as discussed above, Former Management lacks the corporate authority to contest the trustee's waiver of Debtor's privilege. *Est. of Spirtos v. One San Bernardino Cnty. Superior Ct. Case Numbered SPR 02211*, 443 F.3d 1172, 1175 (9th Cir. 2006) ("[A] bankruptcy trustee is vested with **the exclusive power to raise legal claims on behalf of the estate**.") (Emphasis supplied). Thus, an appeal by Former Management regarding the trustee's waiver of the corporate Debtor's privilege is doomed to fail.

Second, Debtor cannot raise for the first time in the Stay Motion or on appeal privilege issues that it failed to raise in the underlying *Objection to Subpoenas and Motion to Quash or Modify Subpoenas* (the "Motion to Quash") [ECF Nos. 32 and 33]. [. The Motion to Quash raised the same undeveloped breadth/burden/relevance and privilege arguments that Former Management made and lost in Arizona. The Motion to Quash did not address the Trustee's ability to waive privilege—a foreseeable (and ironic) consequence of filing for bankruptcy to avoid producing documents. Instead, the Motion to Quash raised only the same conclusory privilege arguments that Former Management has been unsuccessfully making for years. ECF No. 32 at 22 (arguing that "any communications between Lawler and Big Sky Nevada are privileged and confidential. The Subpoenas seek such information in violation of Nevada's attorney/client privilege. To this extent they are improper, bordering on an abuse of process, and must be quashed or limited"). It is well established that courts do not consider arguments raised for the first time on appeal. *Steam Press Holdings, Inc. v. Hawaii Teamsters, Allied Workers Union, Loc. 996*, 302 F.3d 998, 1005 (9th Cir. 2002). Because the appellate court will not consider new privilege arguments, Debtor's appeal is doomed to fail on those issues. Regarding the arguments that Former Management actually made, both courts to have considered Former Managements' requests to quash on the merits have denied them. Former Management cannot show a likelihood of success based on arguments that have been waived and/or repeatedly rejected.

SNELL & WILMER

Third, even setting standing and waiver aside, Former Managements' privilege arguments continue to fail as totally undeveloped. Former Management have not: (a) identified any documents that it alleges are privileged, (b) has not identified who allegedly holds the privilege, (c) has not explained why any of those documents are privileged, and (d) has not explained how Former Managements' tenuous claims of privilege survive the Trustee's waiver of the privilege in this case. Former Management also ignores that the requested discovery focuses on the transfer of Debtor's assets before it filed for bankruptcy and the value of those assets. It does not seek materials related to litigation advice. The onus is on Former Management to identify precisely, and by reference to specific requests in the Subpoenas, the documents which they now contend are privileged. They completely failed to do so, and their generalized/unsupported claims of an amorphous "privilege" should be disregarded.

Kazakhstan's discovery focuses on two main categories of assets and transactions related thereto: (1)Debtor's interest in Big Sky Energy Kazakhstan Ltd. ("Big Sky Canada") that it supposedly lost in foreclosure to Ingalls & Snyder Value Partners L.P. ("Ingalls & Snyder") in April 2022, a portion of which Ingalls & Snyder then transferred to Lawler in July 2023; and (2) Big Sky Canada's recent apparent settlement of its interest in the $30M arbitration award, suggesting that Big Sky Canada was a valuable asset of Debtor's. In other words, both categories (i) involved adverse parties, and (ii) existed prior to the instant bankruptcy case. The involvement of third-party Ingalls & Snyder and the third-party against whom the arbitration award was entered defeats any privilege claim. *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1126–27 (9th Cir. 2012) (disclosure to third-party destroys privilege). Similarly, the amount and source of funds received in settlement of the $30 million arbitration award are facts not protected by the attorney-client privilege. *U.S. v. ChevronTexaco Corp.*, 241 F.Supp.2d 1065, 1069 (N.D. Cal. 2002) ("[T]he privilege protects *communications*, not underlying evidence."). Since the assets and transactions targeted by the discovery existed before the bankruptcy filing, Former Managements' contention that post-petition documents may be implicated falls flat. In sum, Former Managements' purported privilege arguments make no sense in the context of this case. Indeed, Former Management have utterly

SNELL & WILMER

SNELL & WILMER

failed to explain how any privilege could or would apply to the information sought, or whose privilege is supposedly even at issue. Absent these basic facts, the Court can and should disregard the entirety of Former Managements' claim that absent a stay, they might be required to produce unspecified "privileged" documents.

In sum, Debtor (through Former Management) has no likelihood of success on its appeal because Former Management lacks standing; courts have repeatedly denied Former Managements' requests to quash, including rejecting undeveloped claims of privilege; and Debtor's new privilege arguments are waived, wrong, undeveloped, and speculative. None of the documents sought by the Subpoenas should contain privileged information. And even if they did, they should still be turned over to the Trustee anyway pursuant to 11 U.S.C. §§ 541(a)(1), 521(a)(4). For all of these reasons, Former Managements' appeal is not likely to succeed on the merits. For this reason alone, the Court can and should deny the Stay Motion.

**2. The Debtor Will Suffer No Irreparable Harm Absent a Stay**

Former Managements' contention that the production of privileged materials constitutes irreparable harm fails. As the Supreme Court's *Mohawk* decision recognizes, the mere disclosure of privileged materials—even if based on an erroneous order—does not constitute irreparable harm. *Mohawk*, 558 U.S. at 606–07. Indeed, "[a]ppellate courts can remedy the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings[.]" *Id.* Thus, disclosure of privileged materials alone does not constitute irreparable harm. Former Managements' failure to make a threshold showing of harm, therefore, defeats the Stay Motion. *Am. Fed'n of Gov't Emps.*, 139 F.4th at 1029.

**3. A Stay Will Negatively Impact Kazakhstan, the Trustee, and other Creditors**

Kazakhstan, the Trustee, and other possibly undisclosed creditors will certainly be harmed by any further delay in the production of documents and information about the targeted transactions for several reasons. First, the act of making it more difficult to collect constitutes cognizable harm. *In re Medina*, No. 20-60045, 2021 WL 3214757, at *2 (9th Cir. July 29, 2021). The inability to

obtain information necessary to proceed with collection, therefore, constitutes harm to the Debtor's legitimate creditors. Second, the trustee only has until May 14, 2027, under 11 U.S.C. § 546(a)(2) to proceed with avoidance actions. Former Managements' incessant thwarting of discovery over the last three years is compelling evidence that Former Management is trying to cause all avoidance actions to be barred by the applicable statutes of limitation. There is a realistic risk this fast-approaching deadline will expire during an appeal. Third, as noted above, none of the documents sought should implicate privileged material. Thus, Former Managements' proposal to provide a privilege log is intended to undermine the Trustee's waiver of all privileges pursuant to *Commodities Future Trading Commission v. Weintraub*, 471 U.S. 343 (1985), [ECF No. 62], and will most likely just lead to the concealment of relevant information and more litigation. For all of these reasons, granting a stay will negatively impact other interested parties in a significant way.

**4. The Public Interest Supports the Production of the Debtor's Documents**

As demonstrated by the *Mowahk* decision, the withholding of privileged documents does not constitute a protectable public interest. To the contrary, refusing a stay would promote several public interests. First, the bankruptcy process depends upon the full and frank disclosure of information about the Debtor's assets. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 785 (9th Cir. 2001) (noting that the debtor's full disclosure is necessary to "protect the integrity of the bankruptcy process"). Here, Former Management have thwarted that process for years. This delay must end. Second, the Bankruptcy Code vests in the trustee the right to control the Debtor, and thus requiring Former Management to provide relevant information to the trustee also furthers the bankruptcy process. *Est. of Spirtos*, 443 F.3d at 1175 (recognizing trustee's exclusive authority over corporate debtor). Indeed, Former Managements' withholding of relevant information unfairly prevents the trustee and other legitimate creditors from pursuing recovery. Third, requiring Former Management to comply with the Court's Interlocutory Order also furthers the purposes of the bankruptcy code. *In re Hicks*, No. BAP.NC-05-1110-MASZ, 2006 WL 6810987, at *6 (B.A.P. 9th Cir. Feb. 1, 2006) (affirming denial of discharge due to debtor's refusal to comply with bankruptcy court orders). Indeed, all the documents of the Debtor are property of the estate under 11 U.S.C. §

SNELL & WILMER

541, and the Debtor has a statutory duty to turn them over to the trustee under 11 U.S.C. § 521(a)(4). *See also In re Hotels Nevada, LLC*, 458 B.R. 560, 567 (Bankr. D. Nev. 2011) (holding that under Nevada law, the file amassed by an attorney representing a client belongs to the client).

**C. <u>If the Court Considers a Stay, it Should Require a Substantial Bond</u>**

As noted above, the discovery targets assets involving Big Sky Canada and its recent settlement of a claim against a third party arising out of enforcement of a c. $30 million arbitration award. These constitute potentially significant assets of the estate that Former Management seem to want to keep secret. Former Managements' refusal to produce information about these assets, however, has precluded any investigation. Although the Interlocutory Order does not include a monetary component, the implications of a stay clearly have downstream monetary effects. Consequently, if the Court is inclined to grant a stay, it should condition the stay upon the posting of a bond in an amount that approximates the expected value of the assets. Here, the principal balance of the arbitration award is the only valuation in the record, and therefore a $30M bond would be appropriate.

## III. CONCLUSION

For the reasons stated above, the Court should deny the Stay Motion.

Dated: November 6, 2026. SNELL & WILMER L.L.P.

By: */s/ Bob L. Olson*

Bob L. Olson, Esq. (NV Bar No. 3783)
Erin M. Gettel (NV Bar No. 13877)
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
Email: bolson@swlaw.com
egettel@swlaw.com

*Attorneys for Republic of Kazakhstan*

SNELL & WILMER

# EXHIBIT A

EXHIBIT A

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| REPUBLIC OF KAZAKHSTAN,<br>Plaintiff(s),<br>v.<br>BIG SKY ENERGY CORPORATION,<br>Defendant(s). | Case No. 2:22-cv-00509-JCM-NJK<br>**Order**<br>[Docket No. 22] |

Pending before the Court is a motion to quash subpoenas filed by Big Sky and Scott Lawler. Docket No. 22.[1] Plaintiff filed a response in opposition. Docket No. 29. Big Sky and Lawler filed a reply. Docket No. 30. After the motion was filed, the case was reassigned to the undersigned magistrate judge. *See* Docket Nos. 25-26. The motion is properly decided without a hearing. *See* Local Rule 78-1. For the reasons discussed below, the motion to quash is **DENIED** without prejudice to its refiling in the appropriate forum.

A motion to quash a subpoena must be filed in "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(3)(A), (B). The movant bears the burden of persuasion on a motion to quash, *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015), including of showing that the motion was filed in the correct district, *York Holding, Ltd. v. Waid*, 354 F.R.D. 626, 627 (D. Nev. 2024). Subpoena-related motions that have been filed in the wrong district are routinely denied without prejudice to refiling in the proper tribunal. *See, e.g.*, *Europlay Cap. Advisors, LLC v. Does*, 323 F.R.D. 628, 629-30 (C.D. Cal. 2018).[2]

---

[1] On its face, the motion was filed by Big Sky only. Docket No. 22 at 1. The reply specifies that the motion was intended to also have been filed by Lawler. *See* Docket No. 30 at 1 n.1.

[2] The rules provide the potential for transferring a subpoena-related motion from the court where compliance is required to the issuing court. *See* Fed. R. Civ. P. 45(f). The authority to make that decision rests with the court where compliance is required. *See id.* "As such, this provision does not allow a movant to bypass, in the first instance, the court for the district where compliance is required." *York Holding*, 345 F.R.D. at 627 n.2 (citing *Omnitracs, LLC v. Platform Sci., Inc.*, 2023 WL 2815363, at *1 (S.D. Cal. Apr. 6, 2023)).

Plaintiff argues that the pending motion was filed in the wrong district, pointing to the fact that the depositions will take place in Arizona and the deponents are located in Arizona. Docket No. 29 at 7-8.[3] Big Sky and Lawler respond that the face of the subpoena identifies the place for the pre-deposition document production as being in Nevada, although the face of the subpoena identifies the place for the depositions themselves as being in Arizona, and that Big Sky and Lawler still maintain some connection to Nevada. *See* Docket No. 30 at 7-8.

The Court agrees with Plaintiff that Lawler and Big Sky have not shown that Nevada is the place of compliance. Lawler does not dispute that he resides in Arizona. *See* Docket No. 30-1 at ¶ 5. Based on Lawler's own representation, Big Sky does no business at all and is a defunct entity with nothing happening other than Lawler (an Arizona resident) acting as its sole officer and attorney. Docket No. 22-3 at ¶¶ 2-16.[4] Despite these arrows pointing to Arizona for purposes of this motion, Lawler declares in reply that he has a "presence" in Nevada "as needed." *See* Docket No. 30-1 at ¶¶ 5-6. Big Sky and Lawler provide no elaboration of any kind that having a presence in this District "as needed" means that they also "reside[], [are] employed, or *regularly* transact[] business in person" in this District for purposes of the governing rules. *See* Fed. R. Civ. P. 45(c)(1) (emphasis added). By failing to provide meaningfully developed argument on this issue, Big Sky and Lawler have failed to meet their burden of persuasion in showing that they filed their motion in accordance with the governing rules. *Cf. Kor Media*, 294 F.R.D. at 582 n.3.

---

[3] The parties have a history of litigating discovery disputes in federal court in Arizona, including as to documents that Big Sky and Lawler claim overlap with the instant subpoenas. *See, e.g.*, Docket No. 22 at 2.

[4] The reply insinuates that Big Sky should be deemed as residing in Nevada because it was a Nevada entity when it did business a decade ago. *See* Docket No. 30 at 7-8. The governing rules are written based on where the subpoena recipient "resides, is employed, or regularly transacts business in person" in the present tense. *See, e.g.*, Fed. R. Civ. P. 45(c)(1)(A). The reply provides no legal authority or meaningfully developed argument that this inquiry turns on where a defunct entity allegedly did business years ago and such an outcome seems farfetched when, according to its own representations, that business now has and does nothing apart from its sole officer who currently resides in a different state. Ultimately, the Court need not formally resolve the issue because it is the burden of Big Sky and Lawler to show that their motion was properly filed in this District, *York Holding*, 354 F.R.D. at 627, and they waived this argument by failing to develop it in meaningful fashion, *cf. Kor Media Grp., LLC v. Green*, 294 F.R.D. 579, 582 n.3 (D. Nev. 2013).

In short, Big Sky and Lawler fail to meet their burden of showing that they filed their motion in the "district where compliance is required." Accordingly, the motion to quash is **DENIED** without prejudice to its refiling in the appropriate forum.

IT IS SO ORDERED.

Dated: August 23, 2024

Nancy J. Koppe
United States Magistrate Judge

# EXHIBIT B

EXHIBIT B

**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Republic of Kazakhstan,<br>Plaintiff,<br>v.<br>Big Sky Energy Corporation,<br>Defendant. | No. MC-24-00029-PHX-GMS<br>**ORDER** |

Before the Court is Defendant Big Sky Energy Corporation's Objection to Subpoenas and Motion to Quash or Modify Subpoenas (Doc. 1) and Plaintiff Republic of Kazakhstan's Motion for Leave to File a Surreply (Doc. 7). For the reasons below, the Court denies both Motions.

**BACKGROUND**

On July 8, 2022, the District of Nevada entered a default judgment for Plaintiff Republic of Kazakhstan ("Kazakhstan") and against Defendant Big Sky Energy Corporation ("Big Sky") in the amount of $587,030.43, plus applicable interest. *Republic of Kazakhstan v. Big Sky Energy Corp.*, No. 2:22-cv-00509, 2022 WL 19000617, *1 (D. Nev. July 8, 2022). Kazakhstan brought the action to recognize and enforce an International Centre for Settlement of Investment Disputes (ICSID) arbitral award it received against Big Sky in 2021 from a proceeding that Big Sky had initiated in 2017. *Id.*; *See also* Case Details, *Big Sky Energy Corp. v. Republic of Kazakhstan* (ICSID Case No. ARB/17/22), https://icsid.worldbank.org/cases/case-database/case-

detail?CaseNo=ARB/17/22. On January 3, 2024, Kazakhstan served two subpoenas. (Doc. 5 at 5). The first was served on Big Sky, in care of William Scott Lawler, the sole officer and attorney for Big Sky. (Doc. 1-1 at 2). The second was served on Lawler. (Doc. 1-1 at 21) (hereafter collectively "Big Sky"). Both involve a subpoena ad testificandum and a subpoena duces tecum. The parties agreed that Big Sky had until July 8, 2024 to respond to the subpoenas. (Doc. 5 at 6; Doc. 6 at 4).

On July 8, 2024, Big Sky filed its Original Motion to Quash ("Original Motion"). (*Republic of Kazakhstan v. Big Sky Energy Corp.*, in the District of Nevada, No. 2:22-cv-00509-JCM-NJK, Doc. 22). On August 23, 2024, the District of Nevada denied the Original Motion without prejudice to its refiling in the appropriate forum—Arizona. (No. 2:22-cv-00509-JCM-NJK, Doc. 32). The court explained that "a motion to quash a subpoena must be filed in 'the court for the district where compliance is required,'" and "Big Sky is a defunct entity with nothing happening other than Lawler (an Arizona resident) acting as its sole officer and attorney." (*Id.* at 2) (quoting Fed. R. Civ. P. 45(d)(3)(B)).

On September 6, 2024, Big Sky filed its Objection to Subpoenas and Motion to Quash or Modify Subpoenas (Doc. 1) in this Court.[1] Specifically, Big Sky requests the Court quash or modify the subpoenas served on Big Sky and Mr. Lawler, its officer and counsel. (Doc. 1 at 1).

## DISCUSSION

### I. Defendant Big Sky's Motion to Quash or Modify Subpoenas

#### a. Legal Standard

A money judgment creditor whose interest appears of record may, in aid of the judgment or execution, "obtain discovery from any person—including the judgment debtor—as provided in [the Federal Rules of Civil Procedure] or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2). Rule 69 authorizes the use of

[1] Kazakhstan initially disputed this date of filing in its Response, (Doc. 5 at 6), but clarified that Big Sky did, indeed, serve the Motion on Kazakhstan's counsel on September 6. (Doc. 7 at 2).

all discovery tools, including subpoenas, to obtain discovery. *See* Fed. R. Civ. P. 69, 1970 Advisory Committee's Note. However, where a subpoena is issued, Federal Rule of Civil Procedure 45(d)(3) states that, upon a timely motion, a court must quash or modify a subpoena if it "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv).

Courts evaluate a motion to quash under Rule 26. *See Hamilton v. Yavapai Cmty College Dist.*, No. CV-12-08193, 2021 WL 1264007, at *1 ("Motions to quash are evaluated in the context of Rule 26."). Rule 26 states that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see also R. Prasad Indus. v. Flat Irons Env't Sols. Corp.*, No. CV-12-08261, 2014 WL 2804376, at *2 (D. Ariz. June 20, 2014) ("[Rule] 26 . . . defines the permissible scope of discovery, and a Rule 45 subpoena is subject to that same scope."). "The moving party bears the burden of persuasion on a motion to quash, but the party issuing the subpoena must demonstrate that the discovery is relevant." *In re Rule 45 Subpoenas Issued to Google LLC and LinkedIn Corp.*, 337 F.R.D. 639, 645 (N.D. Cal. 2020); *see also Pravati Cap. LLC v. Moore*, No. CV-24-02119, 2024 WL 4299400, at *1 (D. Ariz. 2024) (holding the moving party bears the burden of persuasion and the party issuing the subpoena must demonstrate the information sought is relevant).

**b. Timeliness of Motion**

Kazakhstan asserts that Big Sky's Motion is untimely as to the deposition portions of the Subpoenas and the Lawler Subpoena in its entirety. (Doc. 5 at 8). Rule 45 permits a person commanded to produce "documents or tangible things" to object before the earlier of 14 days after the subpoena is served or the time specified for compliance. Fed. R. Civ. P. 45(d)(2)(B). Rule 45 requires that any motion to quash or modify a subpoena, including

a subpoena to testify, do so in a "timely motion." *Id.* at 45(d)(3)(A). Courts have generally read "timely" to mean "before the compliance date designated in the subpoena." *Odyssey Reinsurance Co. v. Nagby*, No. 16-CV-3038, 2018 WL 1963665, at *2 (S.D. Cal. April 26, 2018); *see also HI.Q, Inc. v. ZeetoGroup, LLC*, No. 22-cv-1440, 2022 WL 17345784, at *6 (S.D. Cal. Nov. 29, 2022).

As to the production portions, Big Sky timely filed the Original Motion in Nevada on July 8, 2024, the time specified for compliance by the parties. Although Big Sky filed in the wrong jurisdiction, "in unusual circumstances and for good cause, the failure to act timely will not bar consideration of objections to a Rule 45 subpoena." *See HI.Q, Inc.*, 2022 WL 17345784, at *11 (cleaned up). Big Sky refiled in Arizona within 14 days of the District of Nevada order, constituting a good-faith effort at compliance. *See Baker v. Ensign*, No. 11-CV-2060, 2014 WL 3058323, at *6 (S.D. Cal. July 3, 2014) ("Courts have found unusual circumstances where . . . the subpoenaed witness is a non-party acting in good faith."). As to the deposition portions, Big Sky filed in Nevada in advance of the July 18 and July 19, 2024 deposition dates and timely filed the Motion in this Court, as directed by the Nevada court. As such, Big Sky and Lawler complied with Rule 45's timing requirements.

**c. Analysis**

**i. Privileged or Confidential Information**

Big Sky asserts the subpoenas should be quashed or modified because they seek information in violation of Big Sky's attorney-client privilege. (Doc. 1 at 7). "A person withholding subpoenaed information under a claim that it is privileged or subject to protection . . . must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2). General objections do not satisfy the requirements of Rule 45(e)(2). *See Compaq Comput. Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 338 (N.D. Cal. 1995); *see also Relevant Grp., LLC v. Nourmand*, No. CV-19-5019, 2021

Case 2:25-mc-00029-DJC Document 1 Filed 11/06/25 Page 5 of 7

WL 9696765, at *4 (C.D. Cal. 2021) ("Cases in this Circuit and beyond consistently hold that a subpoenaed non-party must provide a privilege log when withholding responsive documents based on privilege.").

Here, Big Sky neither served a privilege log nor described the nature of the withheld documents, in violation of the Rule 45(e)(2) requirements. *See* Fed. R. Civ. P. 45(e)(2). Big Sky and Lawler are ordered to serve a privilege log that lists all documents withheld on the ground of privilege against disclosure and provides information as to each document in compliance with Rule 45(e)(2). *See Miller v. Pancucci*, 141 F.R.D. 292, 302 (C.D. Cal. 1992) (finding ten items sufficient to sustain the burden of asserting the attorney-client privilege).

**ii. Unduly Burdensome and Facially Overbroad**

Big Sky asserts Kazakhstan's subpoenas are unduly burdensome and overly broad because the requests are not relevant to Big Sky's ability to pay and set forth too broad a time period. (Doc. 1 at 8-9). "[T]he rules governing discovery in post judgment execution proceedings are quite permissive." *Invesco High Yield Fund v. Jecklin*, 10 F.4th 900, 905 (9th Cir. 2021) (quoting *Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 138 (2014)). However, a court must quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). "In determining whether a subpoena poses an undue burden, courts weigh the burden to the subpoenaed party against the value of the information to the serving party." *Soto v. Castlerock Farming and Transp., Inc.*, 282 F.R.D. 492, 504 (E.D. Cal. 2012). "Generally, this requires consideration of relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Id.* "[T]he party issuing the subpoena must demonstrate that the discovery is relevant." *In re Rule 45 Subpoenas Issued to Google LLC and LinkedIn Corp.*, 337 F.R.D. at 645. However, the party claiming that discovery is unduly burdensome "must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence." *Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape*

*Maint. Ass'n*, 316 F.R.D. 327, 334 (D. Nev. 2016) (internal quotation omitted).

As to relevance, Big Sky argues the requested documents are not relevant because they "fall outside" documents related to Big Sky's ability to pay a judgment. (Doc. 1 at 9). Although information pertaining to Big Sky's ability to pay is relevant, so is information about where Big Sky's assets may be located. *See Experience Hendrix, LLC v. Pitsicalis*, No. CV-21-3362, 2023 WL 4247749, at *4 (C.D. Cal. April 18, 2023) ("The question before the Court is not whether Judgment Creditors may reach the assets of these various entities to satisfy their judgment against Pitsicalis. Rather, Judgment Creditors need only show that discovery regarding these entities is relevant to their search for Pitsicalis' assets."). Kazakhstan asserts its subpoenas seek information regarding entities that are relevant to identifying assets potentially available for application to and satisfaction of the Judgment or to whom money may have been fraudulently transferred to avoid payment of the Judgment. (Doc. 5 at 15-16). Big Sky failed to allege specific facts indicating any burden that complying with the subpoena might cause it. Thus, Kazakhstan has met its burden to show the subpoenas seek relevant information, and the subpoenaed documents are not overly broad.

As to the time period, Big Sky asserts the time period applicable to all document requests in the subpoenas—from September 30, 2015 through the present—is unduly burdensome. (Doc. 1 at 8). However, Big Sky fails to allege any specific facts to demonstrate the "nature and extent of the burden." *Nationstar Mortg., LLC*, 316 F.R.D. at 334 (holding the party claiming the discovery is unduly burdensome bears the burden to allege specific facts which indicate the extent of the burden). As such, the time period provided in the subpoenas is permissible.

**II. Plaintiff Kazakhstan's Motion for Leave to File a Surreply**

Kazakhstan's Motion for Leave to File a Surreply is denied because no further briefing is required. *See Young v. Buttigieg*, No. 23-15219, 2024 WL 4553784, at *1 (9th Cir. 2024) (holding the magistrate judge did not abuse his discretion in denying a motion for leave to file a surreply because the magistrate judge determine no further briefing was

required).

Accordingly,

**IT IS ORDERED** denying Defendant's Objection to subpoenas and Motion to Quash or Modify Subpoenas (Doc. 1).

**IT IS FURTHER ORDERED** Defendant serve a privilege log that lists all documents withheld on the ground of privilege against disclosure and provides information as to each document in compliance with Rule 45(e)(2) and this Order by **February 24, 2025** and file a Notice of Service.

**IT IS FURTHER ORDERED** denying Plaintiff's Motion for Leave to File a Surreply (Doc. 7).

Dated this 24th day of January, 2025.

G. Murray Snow
Senior United States District Judge