**E-filed: November 6, 2026**

Bob L. Olson, Esq. (Nevada Bar No. 3783)
Erin M. Gettel, Esq. (Nevada Bar No. 13877)
SNELL & WILMER L.L.P.
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 784-5200
Facsimile: (702) 784-5252
Email: bolson@swlaw.com
egettel@swlaw.com

*Attorneys for Republic of Kazakhstan*

SNELL & WILMER

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>BIG SKY ENERGY CORPORATION,<br><br>Debtor. | Case No. 25-50445-hlb<br><br>Chapter 7<br><br>**REPUBLIC OF KAZAKHSTAN'S RESPONSE IN OPPOSITION TO DEBTOR'S MOTION FOR PROTECTIVE ORDER UNDER CIVIL RULE 26(c) AND RULE 9018 GOVERNING USE OF DOCUMENTS PRODUCED IN RESPONSE TO THE SUBPOENAS AND AUTHORIZING LIMITED REDACTIONS**<br><br>ECF No. 114<br><br>**Hearing Date: November 13, 2026**<br>**Hearing Time: 10:00 a.m.** |

Creditor Republic of Kazakhstan ("Kazakhstan" or "ROK") by and through its attorneys, Snell & Wilmer L.L.P., hereby responds to *Debtor's Motion for Protective Order Under Civil Rule 26(c) and Rule 9018 Governing Use of Documents Produced in Response to the Subpoenas and Authorizing Limited Redactions* [ECF No. 114] (the "Motion for Protective Order") filed on October 26, 2026, purportedly by Big Sky Energy Corporation ("Debtor") and joined [ECF No. 130] by William Lawler ("Lawler" and together with the Debtor, "Former Management").[1]

[1] ROK uses the phrase "Former Management" because only the Chapter 7 Trustee may direct the Debtor's legal arguments. 11 U.S.C. § 323(a) ("The trustee in a case under this title is the representative of the estate."). As such, only the Trustee could seek any relief on behalf of the Debtor. *Est. of Spirtos v. One San Bernadino Cnty. Superior Ct. Case Numbered SPR 02211*, 443 F.3d 1172, 1175 (9th Cir. 2006) ("[A] bankruptcy trustee is vested with the exclusive power to raise legal claims on behalf of the estate."). The Court should reject Former Managements' attempt to usurp the Trustee's authority and speak on the Debtor's behalf.

The Motion for Protective Order is nothing more than a disguised motion to alter or amend the judgment and should be evaluated under that more rigorous standard. Indeed, the limits sought by the Motion for Protective Order would effectively nullify the long overdue, court-ordered production of documents and strip ROK of its chosen counsel. Rule 2004, Fed. R. Civ. P., literally contemplates "unfettered and broad" discovery "akin to a fishing expedition." *In re Subpoena Duces Tecum*, 461 B.R. 823, 829 (Bankr. S.D.Cal. 2011). To honor the transparency fundamental to the bankruptcy process, the Court should deny the Motion for Protective Order. ROK supports this Opposition with the *Declaration of Lucy Winnington-Ingram in Support of Republic of Kazakhstan's Response to Debtor's Motion for Protective Order Under Civil Rule 26(c) and Rule 9018 Governing Use of Documents Produced in Response to the Subpoenas and Authorizing Limited Redactions* (the "Winnington-Ingram Declaration") attached as **Exhibit A**, and the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTIONAND FACTUAL BACKGROUND

Former Management resisted the turnover of documents for nearly three years.[2] Kazakhstan's discovery focuses on two main categories of assets and transactions related thereto (the "Discovery"): (1) Debtor's interest in Big Sky Energy Kazakhstan Ltd ("Big Sky Canada"), which it reportedly lost in foreclosure to Ingalls & Snyder Value Partners L.P. ("Ingalls & Snyder") in April 2022, a portion of which Ingalls & Snyder then transferred to Lawler – an insider of and the person in control of Debtor before it filed for bankruptcy; and (2) Big Sky Canada's interest in a c. $30 million arbitration award against KoZhaN LLP ("Kozhan")[3] awarded in 2008.

On October 9, 2026, this Court issued its *Memorandum Decision* [ECF No. 104] and entered a related *Order Denying Motion to Quash* [ECF. No. 105] (collectively, the "Interlocutory Order"). In the Interlocutory Order, the Court concluded that: (1) the trustee stepped into the shoes of Debtor's management and waived all privileges with the Privilege Waiver and a privilege review

---

[2] *See, e.g., Opposition to Ex Parte Motion for Order Shortening Time to Hear (1) Debtor's Motion for Protective Order; (2) Debtor's Motion for Limited Stay Pending Appeal; and (3) Debtor's Motion Under Rule 9006(b)(1) to Set Production Schedule* (the "OST Opposition") [ECF No. 118] (detailing the extensive history of this discovery dispute).

[3] Former Management describe the Kozhan judgment in its Motion to Quash at 3-13.





SNELL & WILMER

was therefore unnecessary; (2) Debtor provided no evidence that the Discovery would unduly burden Debtor, and the possibility of future litigation by Big Sky Canada against ROK in the unspecified future, i.e., the Forthcoming Arbitration, did not tip the scales in favor of quashing the Subpoenas; and (3) the Discovery falls within the purview of Rule 2004. ECF No. 104 at 9–10.

The Court also noted Former Managements' pattern of evasion:

> The Court notes that the Debtor refused and failed to fully comply with discovery orders in in the Arizona District Court before bringing its case to this Court. ROK has been seeking post-Judgment discovery for almost three years, which Debtor by its conduct has frustrated. ROK and the Chapter 7 Trustee are gathering information on Debtor's Financial affairs as contemplated by Rule 20004. **These are valid inquiries that Debtor fails to acknowledge**. ECF No. 104 at 10 (Emphasis supplied).

The Interlocutory Order denied the *Objection to Subpoenas and Motion to Quash or Modify Subpoenas and for Protective Order* [ECF No. 32] (the "Motion to Quash") and directed Former Management "to respond to the Subpoenas and produce all responsive documents in their possession, custody, and control to Republic of Kazakhstan, care of its attorneys at Snell & Wilmer, LLC, within 30 days after entry of this order." *Id.* Rather than finally comply after three years of foot-dragging, Former Management filed the Motion for Leave, the Motion to Stay, the Motion for Protective Order, and the 9006 Motion. ECF Nos. 111, 113, 114, and 115.

Former Managements' Motion for Protective Order rests on Former Managements' conspiracy theory that ROK is improperly seeking discovery in this bankruptcy case—a case *that Former Management initiated*—for use in a purported "Forthcoming Arbitration" that Big Sky Canada supposedly intends to bring on an unspecified future date relating to events that occurred more than ten years ago, regarding issues that the ICSID Award resolved in ROK's favor. That is nonsensical.

Former Management first coined the phrase "Forthcoming Arbitration" a year ago in their Motion to Quash. [*See* ECF No. 32 at 3:12-13].[4] As described in the Motion to Quash, Former Management asserted that Big Sky Energy Kazakhstan Ltd. ("Big Sky Canada") intended to

[4] Former Management deceptively state that ROK coined the phrase. [*See* ECF No. 114 ("ROK itself calls the 'Forthcoming Arbitration'"]. Not so; in its opposition to the Motion to Quash, ROK merely used the same definition uttered by Former Management for ease of reference.





SNELL & WILMER

institute an arbitration proceeding against Kazakhstan based on conduct that occurred between 2006 and 2012.[5] [*See id.* at 10-13]. Significantly, Former Management threatened the so-called "Forthcoming Arbitration" for the first time *after* ROK had already served discovery in the District of Nevada enforcement action and *after* the District of Arizona action ordered production. Despite that ROK served the Discovery *before* Former Management ever even threatened that Big Sky Canada may file another arbitration, that the Discovery focuses primarily on events that occurred on or after 2022, and that Former Management instituted the instant action, Former Management urge this Court to accept the fantasy that ROK is using this bankruptcy to improperly seek discovery in a non-existent arbitration in which Debtor's former subsidiary will supposedly attempt to re-litigate issues ROK already won. The argument makes no sense.

The Court recognized the speculative nature of Former Managements' Forthcoming Arbitration Arguments in the Interlocutory Order:

> Debtor argues that ROK is attempting to improperly gather information to support its position in a 'forthcoming arbitration,' However, the possibility that there may a be a legal action commenced by Big Sky Canada against ROK in the unspecified future does not tip the scales in favor of quashing the Subpoenas. The record does not reflect that any such collateral litigation exists.

ECF No. 104 at 9.

Former Managements' arguments regarding the Forthcoming Arbitration have not improved since the Motion to Quash. Just as the Court declined to quash the Subpoenas based on the mere specter that a non-party *may* file some unknown arbitration claim at some unknown point in the future, it should deny the Motion for Protective Order.

## II. <u>LEGAL ARGUMENT</u>

Despite the fact that the bankruptcy process depends upon a transparent debtor, the Motion for Protective Order requests this Court to (1) limit the use of documents to this proceeding, (2) limit who may review any documents produced in an effort to strip ROK of an effective

[5] As described, the so-called "Forthcoming Arbitration" would relitigate the same issues that resulted in a cost award against the Debtor. ROK notes that taking Former Management's description of the supposed claim at face value, Big Sky Canada has literally had over a decade to file such a claim but has not yet done so. For the avoidance of doubt, Kazakhstan expressly refutes (inter alia) both the jurisdictional basis and the admissibility of the claims.



SNELL & WILMER

4932-0059-5677

SNELL & WILMER

representation in this case, and (3) allow Former Management to make redactions purportedly on behalf of non-party Big Sky Canada and other undisclosed third parties. The Court should not impose any such restrictions on the production in this case.

The Motion for Protective Order rests on a faulty premise: that ROK is abusing discovery in the bankruptcy action Debtor initiated to seek unspecified "privileged" information for use in the "Forthcoming Arbitration." As explained above, Kazakhstan's Discovery focuses on two main categories of assets and related transactions: (1) the foreclosure of Debtor's shares in Big Sky Canada (which were conveniently later transferred to Lawler), and (2) Big Sky Canada's settlement of a c. $30M arbitration award. Clearly, both categories targeted by the Discovery (i) involved adverse parties, (ii) existed prior to the instant bankruptcy case, and (ii) have been the subject of Kazakhstan's post-judgment discovery since it domesticated its award in 2022. Former Management completely fails to explain how the Discovery could possibly seek information about the so-called Forthcoming Arbitration. That is likely because ROK has been seeking this same discovery for years—well before the threat of a second arbitration was even made—and, as this Court has already found, the Trustee has waived all privileges and the Discovery pertains to Debtor's financial affairs. ECF No. 104 at 10.

Former Management also completely fail to explain how the Discovery targeting pre-Bankruptcy transactions could possibly seek post-Bankruptcy privileged information. Former Management completely fail to explain how documents related to a foreclosure transaction and/or a settlement of an arbitration award between adverse parties could possibly constitute a privileged communication. And, most problematically, Former Management fail to explain what law gives it the ability to not only usurp the Trustee's authority over the Debtor and its assets, but also to assert privilege on behalf of third-parties. Reducing Former Managements' arguments to their core exposes the absurdity of their positions. With this preface in mind, Kazakhstan explains the futility of Former Managements' Motion for Protective Order below.

## A. **<u>THE MOTION IS A DISGUISED ATTEMPT TO ALTER OR AMEND THE JUDGMENT AND FAILS TO SATISFY RULE 59.</u>**

Although on October 9, 2026, this Court ordered the wholesale, unfettered production of



4932-0059-5677

documents by Former Management (as is contemplated by Rule 2004), Former Management seek to severely restrict and limit production in a way that would allow them to circumvent this Court's order. Former Management filed the Motion for Protective Order seventeen (17) days later, on October 26, 2026.

Although they attempt to style the Motion for Protective Order as a mere request for limitations, those limitations would swallow the whole. As such, the Court should treat the Motion for Protective Order's attack on the Interlocutory Order as a motion to alter or amend the judgment under Rule 59, Fed. R. Civ. P.,[6] and evaluate the request under that standard. *Hoggett v. University of Phoenix*, 863 F.3d 1105, 1108 (9th Cir. 2017) (looking to the "substance, not simply the title" of a "postjudgment motion to determine whether it is in substance a motion to alter or amend the judgment").

This Court may not consider the Motion for Protective Order for a simple procedural reason: it was filed after the 14-day period to do so expired. *See* Fed. R. Bankr. P. 9023 ("[a] motion for a new trial or to alter or amend a judgment must be filed within 14 days after the judgment is entered"). Former Management missed that 14-day deadline. That should be the end of the inquiry. But even if this Court considers the Motion for Protective Order notwithstanding it being filed too late, Former Management cannot show their entitlement to any relief under Rule 59. Under Rule 59, the Court enjoys considerable discretion and should only grant relief if the movant establishes: (1) manifest error, (2) new evidence, (3) manifest injustice, or (4) an intervening change in the law. *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011). Former Management do not even argue that such extraordinary circumstances exist. Accordingly, the Court can and should deny the Motion for Protective Order for failing to satisfy the procedural and substantive requirements of Rule 59.

[6] Rule 59 is made applicable by Fed. R. Bankr. P. 9023. If the Court deems the Motion for Protective Order as Rule 59 motion, then it would be untimely under Rule 9023(b) (requiring such a motion to be file 14 days after entry of the judgment).



SNELL & WILMER

**B. <u>FORMER MANAGEMENT FAIL TO ESTABLISH GOOD CAUSE FOR A PROTECTIVE ORDER UNDER RULE 26.</u>**

Even if the Court evaluates Former Managements' request under Rule 26, the Motion for Protective Order still fails. All of the requested limitations are unreasonable. As such, Former Management fails to establish good cause necessary to restrict their production.

**1. <u>FORMER MANAGEMENT FAIL TO SHOW THEIR ENTITLEMENT TO USE RESTRICTION</u>**

Former Management ask this Court to restrict the use of documents to this proceeding based on its unsubstantiated, speculative concerns about the non-existent Forthcoming Arbitration. Former Management lack standing to assert a privilege on behalf of Big Sky Canada or other third-parties. *In re Hotels Nevada, LLC*, 458 B.R. 560 (Bankr. D. Nev. 2011). This Court can and should disregard all Former Managements' arguments supposedly based on Big Sky Canada's (or other third-party's) rights on this basis alone. But even if Former Management could raise Big Sky Canada's interests, any supposed harm to Big Sky Canada is, like the Forthcoming Arbitration itself, entirely speculative. Big Sky Canada would only be harmed if it finally elected to bring the Forthcoming Arbitration and ROK successfully used the Discovery against it. The hypothetical arbitrator in the hypothetical future arbitration could limit the use of the Discovery as it deems fit. *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 110 (2009) (no irreparable harm flows from an order requiring the disclosure of privileged documents); *Id.* at 106-07 (noting ways a court can "remedy the improper disclosure of privileged material").

Even setting aside the issues of standing and speculative future harm to Big Sky Canada, the proposed use limitation is unreasonable and unworkable. The rule that Former Management Propose—that Rule 2004 discovery should be restricted where information obtained may be used in future litigation—ignores the nature of Rule 2004 discovery and that it routinely leads to information used in future proceedings. Under Former Managements' approach, complex protective orders would almost always be required; that is not how Rule 2004 works. Courts do not limit discovery under Rule 2004 simply because other litigation may occur in the future. *In re*





SNELL & WILMER

*Int'l Fibercom, Inc.*, 283 B.R. 290, 291-92 (Bankr. D. Ariz. 2002) (allowing discovery to proceed under Rule 2004 even though the information might relate to future anticipated litigation). Because the purpose of Rule 2004 is to allow for the investigation and discovery of estate claims and assets, Rule 2004 often precedes other litigation. Former Management deceptively paints the Forthcoming Arbitration as something extraordinary warranting special protections when in reality, the possibility of future litigation is common and unremarkable.

In addition to the unreasonableness of a use restriction, it is also practically unworkable. Former Management offensively state that "[i]f ROK later needs a particular document elsewhere, it may ask." [ECF No. 114 t 12:25-26]. This arrogant statement ignores the fact that ROK has been asking for Discovery literally for years. It also ignores that in the arbitration giving rise to ROK's award against Debtor, Debtor disregarded ROK's "ask" and refused to produce documents, thereby forcing ROK to file an action under 28 U.S.C. § 1782 proceeding to compel production of documents.[7] A use restriction would allow Former Management to engage in round after round of lengthy and expensive delays. The Court should not allow Former Management any basis to withhold documents. Former Management drastically over-litigated their case, and lost. It is long-past time that they disclose the requested information without restriction.

In sum, Former Management is not entitled to a use restriction and if armed with one, will simply use it to further delay and obstruct discovery.

**2. <u>RESTRICTING PERSONS WHO MAY REVIEW THE DISCOVERY IS UNREASONABLE</u>**

Former Managements fails to develop its unreasonable request to limit those who may view documents. Regardless, the unreasonable restriction and improperly seeks to strip ROK of its counsel of choice in both this case and the threatened Forthcoming Arbitration. *In re Cnty. of Los Angeles*, 223 F.3d 990, 996 (9th Cir. 2000) (recognizing that restricting opposing counsel can be a

[7] Former Managements' discovery abuses began in the ICSID Arbitration. ROK was forced to bring the § 1782 proceeding after Debtor refused to comply with the ICSID Tribunal's order to produce documents. Debtor complied after ROK brought the § 1782 proceeding and as a result, the Arizona District Court denied the motion to quash because it was moot. Former Management have repeatedly misrepresented the § 1782 proceeding as if it denied ROK's request for discovery on the merits. That characterization is false. In addition, the § 1782 proceeding involved document requests targeting a jurisdictional defense in the ICSID arbitration, whereas the instant Discovery targets financial condition in a different forum.





SNELL & WILMER

"powerful litigation tactic to deny an opposing party's counsel of choice"). The Court should not countenance such gamesmanship tactics.

The restriction Former Management request would be catastrophic, as it actively and purposefully seeks to exclude Ms. Winnington-Ingram, Reed Smith is ROK's counsel. [*See* **Exhibit A** (Winnington-Ingram Declaration)]. Ms. Winnington-Ingram is the client relationship partner for ROK. *Id.* at ¶ 2. Not only is she the primary contact point with ROK, <u>but she is the sole contact point between Snell & Wilmer and Kazakhstan *Id.* at ¶ 4</u>. Her involvement in this case long-predates Former Managements' belated raising of the so-called Forthcoming Arbitration. *Id.* at 3–4. Effectively removing her from this matter would strip ROK of counsel in this matter, and leave Snell & Wilmer without effective means to coordinate with its client. Neither the facts of this case, nor any law cited by Former Management, warrants such draconian relief. Indeed, although they attempt to paint their request to exclude Ms. Winnington under the guise of a protective order, they effectively seek to remove her from this proceeding. The Court should see through Former Managements' highly aggressive tactics, and recognize the Motion for Protective Order for what it truly is—merely another effort by Former Management to avoid disclosing anything regarding the foreclosure of the stock in Big Sky Canada and the subsequent settlement of the c. $30 million award it held.

Put simply, this effort to strip ROK of counsel should be rejected because it impermissibly interferes with Kazakhstan's right to choose its own counsel. *In re Cnty. of Los Angeles*, 223 F.3d at 996. Here, Former Managements' requested limitation would impermissibly interfere with Kazakhstan's preferred litigation team. *Id.* Snell & Wilmer and Reed Smith have worked collaboratively with Kazakhstan throughout this matter, and it is Kazakhstan's decision on which attorneys it elects to work on these issues. Former Management should not be allowed to impinge on Kazakhstan's counsel of choice by arbitrarily deciding which attorneys might possibly be involved in an as-yet unfiled arbitration proceeding.

In addition to being requested for an improper purpose, Former Managements' attempt to restrict who may view the Discovery is as undeveloped and speculative as the Forthcoming





SNELL & WILMER

Arbitration on which it is based.

First and most importantly, Former Management fail to identify by reference to the categories of documents sought in the Subpoenas why any documents relating to the so-called Forthcoming Arbitration would be responsive and fall within the documents to be produced. Notwithstanding this, Former Management seek to prevent ROK's counsel of choice in this case from reviewing any documents responsive to the Subpoenas which are: (i) targeted at documents which would have no bearing on any so-called Forthcoming Arbitration in any event; and (ii) were filed long before Debtor first raised the prospect of the so-called Forthcoming Arbitration, making Debtor's claims that Kazakhstan is seeking documents for the purpose of its defense in the so-called Forthcoming Arbitration a chronological impossibility.

Second, Big Sky Canada has not filed an arbitration. In fact, it may never file an arbitration. Regardless, the nature, scope, and breadth of any such a future arbitration case is not known and unknowable. At this time it is simply not humanly possible to identify the individuals who may or may not work on that case. The Court cannot and should not impose restrictions on Kazakhstan's team based on the mere possibility that other litigation may arise in the future. Indeed, imposing a restriction on who may or may not view documents would effectively constitute an injunction against those individuals and subject them to potential sanctions should they violate the restriction. The Court should not exercise such extraordinary authority over Kazakhstan and its counsel based solely on Former Management's unsupported musings on what the future may bring.

Further, the unfounded assertion that allowing Kazakhstan to view produced documents could somehow expose third-parties to "pressure" is simply offensive. [ECF No. 114 at 10:2-19]. Former Management's baseless claim that Kazakhstan may engage in sinister activities if it is permitted to review documents produced in this case cannot form the basis of a discovery limitation.

**B. <u>THE COURT SHOULD NOT ALLOW ANY REDACTIONS</u>**

As a threshold point, by asking for redaction of arbitration related materials <u>AND</u> seeking to exclude Ms. Winnington-Ingram and any other attorneys who may work on the so-called Forthcoming Arbitration from viewing any documents, Former Management reveal their true



SNELL & WILMER

purpose of interfering with Kazakhstan's right to choose counsel. Indeed, if the Court allows for redaction of arbitration-related materials, then there would be no need to exclude any counsel from viewing the redacted documents. Clearly, Former Managements' primary purpose is interference. The Court should see through Former Managements' tactics.

The Court should not allow Former Management to make any redactions for several reasons.

First, the Court already ordered that "a privilege review is unnecessary." [ECF No. 104 at 9:3-4]. This is because the Trustee clearly and unequivocally waived the Debtor's privilege, and clearly and unequivocally controls all post-Bankruptcy privilege belonging to the Debtor. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 353 (1985) (trustee controls pre-petition privilege of corporate debtor); *Spirtos*, 443 F.3d at 1175 (trustee controls all aspects of post-bankrupt corporate debtor). As such, Former Management cannot logically be in the possession of any of the Debtor's documents that would otherwise be protected from disclosure by privilege.

Second, Former Management contend that they seek to inappropriately redact Big Sky Canada's documents related to the potential, future, unfiled arbitration. [ECF No. 114 at 10]. Former Management, however, lack standing to make arguments purportedly on Big Sky Canada's behalf. *In re Hotels Nevada, LLC*, 458 B.R. 560 (Bankr. D. Nev. 2011). Regardless, redactions are only permitted in limited circumstances. *Nguyen v. City of Garden Grove*, No. 82101775JVSADSX, 2023 WL 2558536, at *2 (C.D. Cal. Feb. 2, 2023). Former Management have completely failed to make any showing that would justify any ground for a permissible redaction. Moreover, Former Managements' own argument exposes the flaws in its own premise. For example, Former Management contend that documents in their possession, custody, or control may be subject to Big Sky Canada's privilege. But if such documents are in Former Managements' possession, custody, or control, then they have already been disclosed to a third-party which in and of itself destroys any privilege. As such, no privilege log would be warranted, even if Former Management had the standing to assert privilege on behalf of Debtor, Big Sky Canada, or other

SNELL & WILMER

non-parties.

### C. <u>IN THE ALTERNATIVE, THE COURT SHOULD CONTROL THE DISCLOSURE OF ANY ACTUAL PRIVILEGED DOCUMENTS</u>

For all of the reasons discussed above, ROK does not understand how (ii) documents responsive to the Subpoenas could require the production of privileged documents pertaining to the so-called "Forthcoming Arbitration", or (ii) how Former Management would have any legal basis to assert any such privilege. Nevertheless, to the extent the Court is inclined to humor Former Management, it should require Former Management to identify the documents that they contend relate to the so-called "Forthcoming Arbitration" in a detailed log that identifies: (i) the persons involved, (ii) the substance of the communication, (iii) the nature of the communication, (iv) dates, (v) the reasons they believe the communication is privileged; and (vi) the specific request in the Subpoenas to which the document is supposedly responsive. If such a log is prepared and provided to ROK to evaluate, it could then potentially ask the Court to determine whether such documents are in actuality privileged. The burden of establishing that a privilege applies lies, of course, with the party asserting the privilege. *Weil v. Investment/Indicators Research & Mgmt.*, 647 F.2d 18, 25 (9th Cir. 1981).

As the law makes clear, the attorney-client privilege does not provide an all-encompassing blanket protection for all communications that merely include an attorney. *U.S. v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996). Indeed, the privilege only applies to communications where legal advice is sought and provided; the privilege does not protect underlying evidence or facts. *Id.* To the extent Former Management can produce a log that demonstrates the applicability of the attorney-client privilege related specifically to the providing of legal advice regarding the so-called "Forthcoming Arbitration", that may provide a potential satisfactory solution.[8]

[8] ROK's counsel does not seek to obtain any unfair litigation advantage, and has no desire to review any documents that actually pertain to any litigation strategy involving the so-called Forthcoming Arbitration. ROK's counsel will comply with its ethical obligations should it encounter any such information.





SNELL & WILMER

## III. CONCLUSION

Former Management fail to make the showing necessary to impose any restrictions on their production of documents in this case. Their proposed restrictions are all unreasonable and unwieldy and would only lead to further discovery obstruction and delay. This Court should deny the Motion for Protective Order.

Dated: November 6, 2026. SNELL & WILMER L.L.P.

By: */s/ Bob L. Olson*

Bob L. Olson, Esq. (NV Bar No. 3783)
Erin M. Gettel (NV Bar No. 13877)
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
Email: bolson@swlaw.com
egettel@swlaw.com

*Attorneys for Republic of Kazakhstan*

SNELL & WILMER

# EXHIBIT A

EXHIBIT A

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

REPUBLIC OF KAZAKHSTAN,
Plaintiff(s),
v.
BIG SKY ENERGY CORPORATION,
Defendant(s).

Case No. 2:22-cv-00509-JCM-NJK

**Order**

[Docket No. 22]

Pending before the Court is a motion to quash subpoenas filed by Big Sky and Scott Lawler. Docket No. 22.[1] Plaintiff filed a response in opposition. Docket No. 29. Big Sky and Lawler filed a reply. Docket No. 30. After the motion was filed, the case was reassigned to the undersigned magistrate judge. *See* Docket Nos. 25-26. The motion is properly decided without a hearing. *See* Local Rule 78-1. For the reasons discussed below, the motion to quash is **DENIED** without prejudice to its refiling in the appropriate forum.

A motion to quash a subpoena must be filed in "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(3)(A), (B). The movant bears the burden of persuasion on a motion to quash, *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015), including of showing that the motion was filed in the correct district, *York Holding, Ltd. v. Waid*, 354 F.R.D. 626, 627 (D. Nev. 2024). Subpoena-related motions that have been filed in the wrong district are routinely denied without prejudice to refiling in the proper tribunal. *See, e.g.*, *Europlay Cap. Advisors, LLC v. Does*, 323 F.R.D. 628, 629-30 (C.D. Cal. 2018).[2]

---

[1] On its face, the motion was filed by Big Sky only. Docket No. 22 at 1. The reply specifies that the motion was intended to also have been filed by Lawler. *See* Docket No. 30 at 1 n.1.

[2] The rules provide the potential for transferring a subpoena-related motion from the court where compliance is required to the issuing court. *See* Fed. R. Civ. P. 45(f). The authority to make that decision rests with the court where compliance is required. *See id.* "As such, this provision does not allow a movant to bypass, in the first instance, the court for the district where compliance is required." *York Holding*, 345 F.R.D. at 627 n.2 (citing *Omnitracs, LLC v. Platform Sci., Inc.*, 2023 WL 2815363, at *1 (S.D. Cal. Apr. 6, 2023)).

Plaintiff argues that the pending motion was filed in the wrong district, pointing to the fact that the depositions will take place in Arizona and the deponents are located in Arizona. Docket No. 29 at 7-8.[3] Big Sky and Lawler respond that the face of the subpoena identifies the place for the pre-deposition document production as being in Nevada, although the face of the subpoena identifies the place for the depositions themselves as being in Arizona, and that Big Sky and Lawler still maintain some connection to Nevada. *See* Docket No. 30 at 7-8.

The Court agrees with Plaintiff that Lawler and Big Sky have not shown that Nevada is the place of compliance. Lawler does not dispute that he resides in Arizona. *See* Docket No. 30-1 at ¶ 5. Based on Lawler's own representation, Big Sky does no business at all and is a defunct entity with nothing happening other than Lawler (an Arizona resident) acting as its sole officer and attorney. Docket No. 22-3 at ¶¶ 2-16.[4] Despite these arrows pointing to Arizona for purposes of this motion, Lawler declares in reply that he has a "presence" in Nevada "as needed." *See* Docket No. 30-1 at ¶¶ 5-6. Big Sky and Lawler provide no elaboration of any kind that having a presence in this District "as needed" means that they also "reside[], [are] employed, or *regularly* transact[] business in person" in this District for purposes of the governing rules. *See* Fed. R. Civ. P. 45(c)(1) (emphasis added). By failing to provide meaningfully developed argument on this issue, Big Sky and Lawler have failed to meet their burden of persuasion in showing that they filed their motion in accordance with the governing rules. *Cf. Kor Media*, 294 F.R.D. at 582 n.3.

---

[3] The parties have a history of litigating discovery disputes in federal court in Arizona, including as to documents that Big Sky and Lawler claim overlap with the instant subpoenas. *See, e.g.*, Docket No. 22 at 2.

[4] The reply insinuates that Big Sky should be deemed as residing in Nevada because it was a Nevada entity when it did business a decade ago. *See* Docket No. 30 at 7-8. The governing rules are written based on where the subpoena recipient "resides, is employed, or regularly transacts business in person" <u>in the present tense</u>. *See, e.g.*, Fed. R. Civ. P. 45(c)(1)(A). The reply provides no legal authority or meaningfully developed argument that this inquiry turns on where a defunct entity allegedly did business years ago and such an outcome seems farfetched when, according to its own representations, that business now has and does nothing apart from its sole officer who currently resides in a different state. Ultimately, the Court need not formally resolve the issue because it is the burden of Big Sky and Lawler to show that their motion was properly filed in this District, *York Holding*, 354 F.R.D. at 627, and they waived this argument by failing to develop it in meaningful fashion, *cf. Kor Media Grp., LLC v. Green*, 294 F.R.D. 579, 582 n.3 (D. Nev. 2013).

In short, Big Sky and Lawler fail to meet their burden of showing that they filed their motion in the "district where compliance is required." Accordingly, the motion to quash is **DENIED** without prejudice to its refiling in the appropriate forum.

IT IS SO ORDERED.

Dated: August 23, 2024

Nancy J. Koppe
United States Magistrate Judge

# EXHIBIT B

EXHIBIT B

Case 2:24-mc-00029-GMS Document 11 Filed 10/24/24 Page 1 of 8

WO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Republic of Kazakhstan,<br>Plaintiff,<br>v.<br>Big Sky Energy Corporation,<br>Defendant. | No. MC-24-00029-PHX-GMS<br>**ORDER** |

Before the Court is Defendant Big Sky Energy Corporation's Objection to Subpoenas and Motion to Quash or Modify Subpoenas (Doc. 1) and Plaintiff Republic of Kazakhstan's Motion for Leave to File a Surreply (Doc. 7). For the reasons below, the Court denies both Motions.

**BACKGROUND**

On July 8, 2022, the District of Nevada entered a default judgment for Plaintiff Republic of Kazakhstan ("Kazakhstan") and against Defendant Big Sky Energy Corporation ("Big Sky") in the amount of $587,030.43, plus applicable interest. *Republic of Kazakhstan v. Big Sky Energy Corp.*, No. 2:22-cv-00509, 2022 WL 19000617, *1 (D. Nev. July 8, 2022). Kazakhstan brought the action to recognize and enforce an International Centre for Settlement of Investment Disputes (ICSID) arbitral award it received against Big Sky in 2021 from a proceeding that Big Sky had initiated in 2017. *Id.*; *See also* Case Details, *Big Sky Energy Corp. v. Republic of Kazakhstan* (ICSID Case No. ARB/17/22), https://icsid.worldbank.org/cases/case-database/case-

detail?CaseNo=ARB/17/22. On January 3, 2024, Kazakhstan served two subpoenas. (Doc. 5 at 5). The first was served on Big Sky, in care of William Scott Lawler, the sole officer and attorney for Big Sky. (Doc. 1-1 at 2). The second was served on Lawler. (Doc. 1-1 at 21) (hereafter collectively "Big Sky"). Both involve a subpoena ad testificandum and a subpoena duces tecum. The parties agreed that Big Sky had until July 8, 2024 to respond to the subpoenas. (Doc. 5 at 6; Doc. 6 at 4).

On July 8, 2024, Big Sky filed its Original Motion to Quash ("Original Motion"). (*Republic of Kazakhstan v. Big Sky Energy Corp.*, in the District of Nevada, No. 2:22-cv-00509-JCM-NJK, Doc. 22). On August 23, 2024, the District of Nevada denied the Original Motion without prejudice to its refiling in the appropriate forum—Arizona. (No. 2:22-cv-00509-JCM-NJK, Doc. 32). The court explained that "a motion to quash a subpoena must be filed in 'the court for the district where compliance is required,'" and "Big Sky is a defunct entity with nothing happening other than Lawler (an Arizona resident) acting as its sole officer and attorney." (*Id.* at 2) (quoting Fed. R. Civ. P. 45(d)(3)(B)).

On September 6, 2024, Big Sky filed its Objection to Subpoenas and Motion to Quash or Modify Subpoenas (Doc. 1) in this Court.[1] Specifically, Big Sky requests the Court quash or modify the subpoenas served on Big Sky and Mr. Lawler, its officer and counsel. (Doc. 1 at 1).

## DISCUSSION

### I. Defendant Big Sky's Motion to Quash or Modify Subpoenas

#### a. Legal Standard

A money judgment creditor whose interest appears of record may, in aid of the judgment or execution, "obtain discovery from any person—including the judgment debtor—as provided in [the Federal Rules of Civil Procedure] or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2). Rule 69 authorizes the use of

[1] Kazakhstan initially disputed this date of filing in its Response, (Doc. 5 at 6), but clarified that Big Sky did, indeed, serve the Motion on Kazakhstan's counsel on September 6. (Doc. 7 at 2).

all discovery tools, including subpoenas, to obtain discovery. *See* Fed. R. Civ. P. 69, 1970 Advisory Committee's Note. However, where a subpoena is issued, Federal Rule of Civil Procedure 45(d)(3) states that, upon a timely motion, a court must quash or modify a subpoena if it "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv).

Courts evaluate a motion to quash under Rule 26. *See Hamilton v. Yavapai Cmty College Dist.*, No. CV-12-08193, 2021 WL 1264007, at *1 ("Motions to quash are evaluated in the context of Rule 26."). Rule 26 states that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see also R. Prasad Indus. v. Flat Irons Env't Sols. Corp.*, No. CV-12-08261, 2014 WL 2804376, at *2 (D. Ariz. June 20, 2014) ("[Rule] 26 . . . defines the permissible scope of discovery, and a Rule 45 subpoena is subject to that same scope."). "The moving party bears the burden of persuasion on a motion to quash, but the party issuing the subpoena must demonstrate that the discovery is relevant." *In re Rule 45 Subpoenas Issued to Google LLC and LinkedIn Corp.*, 337 F.R.D. 639, 645 (N.D. Cal. 2020); *see also Pravati Cap. LLC v. Moore*, No. CV-24-02119, 2024 WL 4299400, at *1 (D. Ariz. 2024) (holding the moving party bears the burden of persuasion and the party issuing the subpoena must demonstrate the information sought is relevant).

**b. Timeliness of Motion**

Kazakhstan asserts that Big Sky's Motion is untimely as to the deposition portions of the Subpoenas and the Lawler Subpoena in its entirety. (Doc. 5 at 8). Rule 45 permits a person commanded to produce "documents or tangible things" to object before the earlier of 14 days after the subpoena is served or the time specified for compliance. Fed. R. Civ. P. 45(d)(2)(B). Rule 45 requires that any motion to quash or modify a subpoena, including

a subpoena to testify, do so in a "timely motion." *Id.* at 45(d)(3)(A). Courts have generally read "timely" to mean "before the compliance date designated in the subpoena." *Odyssey Reinsurance Co. v. Nagby*, No. 16-CV-3038, 2018 WL 1963665, at *2 (S.D. Cal. April 26, 2018); *see also HI.Q, Inc. v. ZeetoGroup, LLC*, No. 22-cv-1440, 2022 WL 17345784, at *6 (S.D. Cal. Nov. 29, 2022).

As to the production portions, Big Sky timely filed the Original Motion in Nevada on July 8, 2024, the time specified for compliance by the parties. Although Big Sky filed in the wrong jurisdiction, "in unusual circumstances and for good cause, the failure to act timely will not bar consideration of objections to a Rule 45 subpoena." *See HI.Q, Inc.*, 2022 WL 17345784, at *11 (cleaned up). Big Sky refiled in Arizona within 14 days of the District of Nevada order, constituting a good-faith effort at compliance. *See Baker v. Ensign*, No. 11-CV-2060, 2014 WL 3058323, at *6 (S.D. Cal. July 3, 2014) ("Courts have found unusual circumstances where . . . the subpoenaed witness is a non-party acting in good faith."). As to the deposition portions, Big Sky filed in Nevada in advance of the July 18 and July 19, 2024 deposition dates and timely filed the Motion in this Court, as directed by the Nevada court. As such, Big Sky and Lawler complied with Rule 45's timing requirements.

**c. Analysis**

**i. Privileged or Confidential Information**

Big Sky asserts the subpoenas should be quashed or modified because they seek information in violation of Big Sky's attorney-client privilege. (Doc. 1 at 7). "A person withholding subpoenaed information under a claim that it is privileged or subject to protection . . . must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2). General objections do not satisfy the requirements of Rule 45(e)(2). *See Compaq Comput. Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 338 (N.D. Cal. 1995); *see also Relevant Grp., LLC v. Nourmand*, No. CV-19-5019, 2021

Case 2:24-mc-00029-GMN Document 41 Filed 11/04/25 Page 5 of 8

WL 9696765, at *4 (C.D. Cal. 2021) ("Cases in this Circuit and beyond consistently hold that a subpoenaed non-party must provide a privilege log when withholding responsive documents based on privilege.").

Here, Big Sky neither served a privilege log nor described the nature of the withheld documents, in violation of the Rule 45(e)(2) requirements. *See* Fed. R. Civ. P. 45(e)(2). Big Sky and Lawler are ordered to serve a privilege log that lists all documents withheld on the ground of privilege against disclosure and provides information as to each document in compliance with Rule 45(e)(2). *See Miller v. Pancucci*, 141 F.R.D. 292, 302 (C.D. Cal. 1992) (finding ten items sufficient to sustain the burden of asserting the attorney-client privilege).

**ii. Unduly Burdensome and Facially Overbroad**

Big Sky asserts Kazakhstan's subpoenas are unduly burdensome and overly broad because the requests are not relevant to Big Sky's ability to pay and set forth too broad a time period. (Doc. 1 at 8-9). "[T]he rules governing discovery in post judgment execution proceedings are quite permissive." *Invesco High Yield Fund v. Jecklin*, 10 F.4th 900, 905 (9th Cir. 2021) (quoting *Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 138 (2014)). However, a court must quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). "In determining whether a subpoena poses an undue burden, courts weigh the burden to the subpoenaed party against the value of the information to the serving party." *Soto v. Castlerock Farming and Transp., Inc.*, 282 F.R.D. 492, 504 (E.D. Cal. 2012). "Generally, this requires consideration of relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Id.* "[T]he party issuing the subpoena must demonstrate that the discovery is relevant." *In re Rule 45 Subpoenas Issued to Google LLC and LinkedIn Corp.*, 337 F.R.D. at 645. However, the party claiming that discovery is unduly burdensome "must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence." *Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape*

*Maint. Ass'n*, 316 F.R.D. 327, 334 (D. Nev. 2016) (internal quotation omitted).

As to relevance, Big Sky argues the requested documents are not relevant because they "fall outside" documents related to Big Sky's ability to pay a judgment. (Doc. 1 at 9). Although information pertaining to Big Sky's ability to pay is relevant, so is information about where Big Sky's assets may be located. *See Experience Hendrix, LLC v. Pitsicalis*, No. CV-21-3362, 2023 WL 4247749, at *4 (C.D. Cal. April 18, 2023) ("The question before the Court is not whether Judgment Creditors may reach the assets of these various entities to satisfy their judgment against Pitsicalis. Rather, Judgment Creditors need only show that discovery regarding these entities is relevant to their search for Pitsicalis' assets."). Kazakhstan asserts its subpoenas seek information regarding entities that are relevant to identifying assets potentially available for application to and satisfaction of the Judgment or to whom money may have been fraudulently transferred to avoid payment of the Judgment. (Doc. 5 at 15-16). Big Sky failed to allege specific facts indicating any burden that complying with the subpoena might cause it. Thus, Kazakhstan has met its burden to show the subpoenas seek relevant information, and the subpoenaed documents are not overly broad.

As to the time period, Big Sky asserts the time period applicable to all document requests in the subpoenas—from September 30, 2015 through the present—is unduly burdensome. (Doc. 1 at 8). However, Big Sky fails to allege any specific facts to demonstrate the "nature and extent of the burden." *Nationstar Mortg., LLC*, 316 F.R.D. at 334 (holding the party claiming the discovery is unduly burdensome bears the burden to allege specific facts which indicate the extent of the burden). As such, the time period provided in the subpoenas is permissible.

## II. Plaintiff Kazakhstan's Motion for Leave to File a Surreply

Kazakhstan's Motion for Leave to File a Surreply is denied because no further briefing is required. *See Young v. Buttigieg*, No. 23-15219, 2024 WL 4553784, at *1 (9th Cir. 2024) (holding the magistrate judge did not abuse his discretion in denying a motion for leave to file a surreply because the magistrate judge determine no further briefing was

required).

Accordingly,

**IT IS ORDERED** denying Defendant's Objection to subpoenas and Motion to Quash or Modify Subpoenas (Doc. 1).

**IT IS FURTHER ORDERED** Defendant serve a privilege log that lists all documents withheld on the ground of privilege against disclosure and provides information as to each document in compliance with Rule 45(e)(2) and this Order by **February 24, 2025** and file a Notice of Service.

**IT IS FURTHER ORDERED** denying Plaintiff's Motion for Leave to File a Surreply (Doc. 7).

Dated this 24th day of January, 2025.

G. Murray Snow
Senior United States District Judge

# EXHIBIT A

EXHIBIT A

**E-filed: November 6, 2026**

Bob L. Olson, Esq. (Nevada Bar No. 3783)
Erin M. Gettel, Esq. (Nevada Bar No. 13877)
SNELL & WILMER L.L.P.
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 784-5200
Facsimile: (702) 784-5252
Email: bolson@swlaw.com
egettel@swlaw.com

*Attorneys for Republic of Kazakhstan*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>BIG SKY ENERGY CORPORATION,<br><br>Debtor. | Case No. 25-50445-hlb<br><br>Chapter 7<br><br>**DECLARATION OF LUCY WINNINGTON-INGRAM IN SUPPORT OF REPUBLIC OF KAZAKHSTAN'S RESPONSE TO DEBTOR'S MOTION FOR PROTECTIVE ORDER UNDER CIVIL RULE 26(c) AND RULE 9018 GOVERNING USE OF DOCUMENTS PRODUCED IN RESPONSE TO THE SUBPOENAS AND AUHORIZING LIMITED REDACTIONS**<br><br>ECF No. 114 |

I, Lucy Winnington-Ingram, declare and state as follows. I am above the age of 18 and am competent to make this declaration.

1. I am a Partner in the London office of Reed Smith. My practice primarily involves international arbitration disputes in the mining, energy, construction and commodities sectors.

2. I am the Reed Smith client relationship partner for the Ministry of Justice of the Republic of Kazakhstan ("Kazakhstan") for all matters. I am the primary contact point with Kazakhstan.

3. I was part of the team which represented Kazakhstan in the International Centre for Settlement of Investment Disputes ("ICSID") arbitration, which resulted in the 2021 award

SNELL & WILMER


4931-4486-0638

SNELL & WILMER

dismissing all claims brought by Big Sky Energy Corporation ("Debtor") and granting Kazakhstan a portion of its costs.

4. Since the ICSID award, I have also been part of the team involved in representing Kazakhstan in enforcement proceedings against the Debtor. Reed Smith has served primarily as national and international counsel, and Snell & Wilmer, L.L.P. ("S&W") has served primarily as local counsel. I am the sole contact point between S&W and Kazakhstan.

5. In its *Objection to Subpoenas and Motion to Quash or Modify Subpoenas and for Protective Order* [ECF No. 32] filed October 2, 2025 ("Motion to Quash"), the Debtor indicated that its previously wholly owned subsidiary, Big Sky Energy Kazakhstan Ltd. ("Big Sky Canada") now supposedly intends to file a new arbitration proceeding against Kazakhstan, which it defined as the so-called "Forthcoming Arbitration". [*See* ECF No. 32 at 3:12 ("*As Kazakhstan is well aware, Big Sky Canada intends to submit the matter to international arbitration under the Canada-USSR BIT ("**Forthcoming Arbitration**"*))].

6. As described in the Motion to Quash, the so-called Forthcoming Arbitration would relate to events that occurred between 2006 and 2012, and would essentially seek to relitigate the same issues that resulted in the costs award against the Debtor (but this time with the claims being brought by Big Sky Canada rather than the Debtor). Kazakhstan expressly refutes (*inter alia*) both the jurisdictional basis and the admissibility of the threatened claims by Big Sky Canada.

7. Although Big Sky Canada has notified Kazakhstan of the so-called Forthcoming Arbitration, as of the date of this Declaration, no arbitration is on foot.

8. I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 6 day of November 2026.

[signature]

Lucy Winnington-Ingram